JOHN T. B. DORSEY *vs.* JOHN T. W. DORSEY.

*Foreclosure of Mortgage—Preliminary order of Sale under sec. 129, Art. 16, of the Code—Proceeding against a Non-resident defendant, residing in an enemy's country—Plea of Alien Enemy as a ground of Relief—Effect of a state of War upon contracts, titles, rights and remedies.*

The provision in section 125, Art. 16, of the Code, that in any suit to foreclose a mortgage, the Court may decree a sale, unless the debt be paid by a day fixed in the decree, is not only to be read in connection with, and as subordinate to the general provision in section 129, but the having a day fixed for payment previous to a sale, is a privilege which the mortgagor may waive by answer, or by previous assent contained in the mortgage itself, as by the stipulation that if any default be made in the payment of the principle or interest of the mortgage debt, the mortgagee may forthwith foreclose the mortgage, and sell the property thereby mortgaged.

Dorsey *vs.* Dorsey.

On a bill filed against a non-resident to foreclose a mortgage, the original mortgage was filed with the bill, which charged not only that no part of the principal or interest of the debt had been paid, but that an attachment had been issued out of the same Court on its law side, at the instance of another creditor, and levied upon the mortgagor's interest in the mortgaged property, and also made mention of another bill in equity pending in said Court against the mortgagor. HELD:

That the facts thus brought to the knowledge of the Judge of the Court, were such as he might act upon without any other proof, in passing a preliminary order of sale under section 129, which provides that the Court may, in its discretion, order a sale of the property before a final decree, if satisfied clearly by proof, that at the final hearing of the case, a sale will be ordered.

Upon an order so passed, the trustee did not proceed to sell until after the expiration of the time limited in the order of publication for the appearance of the defendant; he then sold at public sale, after due and ample advertisement, and obtained its full value for the land. The sale was duly reported to, and finally ratified by the Court. A commission then issued under which were proved the mortgage, and the note evidencing the mortgage debt by proof sufficient to warrant a decree for a sale. The auditor then stated an account distributing the proceeds of sale, and the account was finally ratified, and the trustee ordered to distribute the fund accordingly. More than fifteen months after the passage of the latter order, a petition was filed in the cause by the mortgagee, asking that the order of sale be annulled, on the ground that it was improvidently issued, but without presenting any equitable considerations therefor, or expressing any purpose or design to have the decree opened in order to let in a meritorious defence to the bill. HELD:

1st. That the order finally ratifying the auditor's report, was the only final decree which could be passed after the preliminary order of sale, and the only one in such a case contemplated by section 129.

2d. That there was no ground laid for reversing the order directing the sale.

The term "non-resident," in section 88, Art. 16, of the Code, means "a person who doth not reside in this State," as defined in the law relating to attachment. (Art. 10, sec. 2.)

The proceeding against a non-resident defendant by order of publication, is simply a statutory mode of conferring upon the Court power to pass judgment on property, the subject matter of suit, within its jurisdiction, when the owner is beyond the reach of its process.

Dorsey *vs.* Dorsey.

The Courts in such cases act upon the presumption of notice which they will not allow to be rebutted.

War, and the residence of the defendant in the enemy's country, cannot be set up to avoid the proceeding, and defeat the title of the purchaser acquired thereunder.

Neither the contract by which property is mortgaged, nor the remedy upon it is suspended by war, where there is no occasion to resort to the enemy's Courts to enforce it against the mortgaged property.

APEPAL from the Circuit Court for Howard County, sitting in Equity.

The bill in this case was filed by the appellee against the appellant and others, on the 5th of December, 1863, for the foreclosure of a mortgage executed by the appellant, who at that time was residing in that part of the State of Virginia with which the United States was at war. On the same day an order of publication was passed against the appellant, warning him to appear on or before the 1st day of May, 1864, and answer the bill.

On the 4th day of January, 1864, the Court passed an order for the sale of the mortgaged premises, and appointing a trustee for that purpose. The order stated that the Court was "satisfied clearly by the proof, that at the final hearing of this case a sale of the mortgaged premises, in the proceedings mentioned, will be ordered." The proceedings and the character of the proof in the cause, are set forth in the opinion of this Court. More than fifteen months after the final ratification of the auditor's account, distributing the proceeds of the sale made by the trustee, the appellant filed in the cause a petition in which he stated, that about the 1st day of July, 1861, being then a citizen of the State of Maryland, he left his home to visit his wife, then very ill at her father's in Winchester, Virginia, with the intention of returning in a few days, but owing to the position of the two armies in and about Winchester and Harper's Ferry, was unable to do so. His absence was thus prolonged and his return thus prevented, until he was advised that it would be no longer safe

Dorsey *vs.* Dorsey.

to make the attempt. He was forced to wait impatiently for the close of the civil war, before he could return to his home, although at all times desiring and intending so to do.

The petition further alleged, that the bill of complaint in this cause was filed on the 3d day of December, 1863, and that on the 5th day of the same month, an order of publication was issued by the clerk of this Court, to be inserted in some newspaper published in the city of Baltimore, once a week in each of four successive weeks, before the 1st of February next following, notifying the petitioner to appear on or before the 1st day of May following, to answer, &c. That on the 8th day of January, 1864, before the expiration of the period of advertisement required by the order of publication, and without any proof of the execution of the mortgage deed filed in this cause, or of the alleged mortgaged debt, and without any proof being offered to satisfy the Court, that at the final hearing of the cause a sale of the mortgaged premises would be ordered, an order for the sale of the lands of the petitioner was passed, which order as the petitioner averred was illegal, and improvidently issued, and the petition prayed that the same might be rescinded and annulled.

The Court, (SMITH, J.,) after a hearing, passed an order dismissing the petition, and from this order the present appeal was taken.

The cause was argued before STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*Levin Gale* and *Thomas G. Pratt*, for the appellant:

When the mortgage became due, and at the time when the suit was instituted, the mortgagor being in a hostile country, the remedy of the mortgagee was suspended; no proceedings against the defendant to enforce the mortgage claim could be had; nor did the mortgage debt bear interest during the

period of hostilities. *Mrs. Alexander's Cotton,* 2 *Wallace,* 419; *Griswold vs. Waddington,* 15 *Johns.,* 82, *and same case in* 16 *Johns.,* 460 ; *Hanger vs. Abbot,* 6 *Wallace,* 532 ; *Life Insurance Co. vs. Hall, Amer. Law Register, August,* 1868, *page* 606 ; *President's Proclamation, August,* 1861.

The bill in, this case was not a proceeding strictly *in rem.*; it did not describe any particular property ; there was no levy, schedule, appraisement, or return of it.   It only attacked the land through the parties. *Clark & Jackson vs. Bryan & Lunt,* 16 *Md.,* 178 ; *Hollingsworth vs. Barbour,* 4 *Peters,* 466 ; *Harris vs. Hardeman,* 14 *How.,* 343 ; *Woodruff vs. Taylor,* 20 *Vermont,* 66 ; *McKim vs. Mason,* 3 *Md. Ch. Dec.,* 212.

If the absent defendant had not been made a party by publication, no decree could have bound his interests. *Code, Art.* 16, *secs.* 88, 91.

Section 129, authorizing a sale before final decree, must be taken, as to non-residents, as being subject to and qualified by those sections, otherwise you would have this anomalous condition ; that if you advertise a non-resident to come in at a future day, thus putting him off his guard, you would have a right to sell at once ; whereas, if you had given him no notice, instead of a false one, he certainly would not be bound. And in this, the case of a mortgage, the provision certainly could not apply ; the Court is required to give the mortgagor a day for payment previous to passing a decree for sale. *Code, Art.* 16, *sec.* 125 ; 2 *Hilliard on Mortgages,* 40.

*James Mackubin* and *George H. Williams,* for the appellee :

To entitle the appellant to the relief sought, whether by bill of review or otherwise, the conscience of the Court must be satisfied that some wrong has been done him. *Duke of Beaufort vs. Crawshay,* 1 *Law Reports, Com. Pleas,* 699.

Is any such wrong even *alleged* in his petition ?   Does he *even aver* that the debt, which was the cause of action, was not justly due and owing from him ?   Does he *pretend* even that the property sold was at all sacrificed ?   Where then

the wrong? It is in vain that the appellant avers that he was not a non-resident; his own witnesses prove the contrary, even could it avail anything. What constitutes non-residence? *Field vs. Adrion*, 7 *Md.*, 209; *Haney vs. Marshall*, 9 *Md.*, 208; *Risewick vs. Davis*, 19 *Md.*, 91.

Section 129, of Article 16, of the Code, gives authority, in suits instituted for the sale of real estate, to the Court, "*in its discretion*," to order a sale before final decree, if satisfied clearly by proof that at the final hearing a sale will be ordered.

But is the exercise of discretionary power given by statute to a Court below, subject to revision here? *Warren vs. Twilley* 10 *Md.*, 46.

If the proceedings were not wholly regular, yet the record shows a ratified sale under a decree, and Courts will not disturb a title so acquired. *Warren vs. Twilley*, 10 *Md.*, 51, 52; *Tomlinson vs. Devore*, 1 *Gill*, 345; *Elliott vs. Knott*, 14 *Md.*, 121.

MILLER, J., delivered the opinion of the Court.

Waiving a decision of the question whether any of the orders or decrees in this case can be assailed by petition after enrolment, we shall consider the two principal objections urged against them in argument, as if properly presented by this appeal from the order dismissing the appellant's petition, filed on the 19th of March, 1866.

1st. It has been argued, and the petition avers that the order of the 4th of January, 1864, directing a sale of the mortgaged premises, was illegal and improvidently passed, because passed before the expiration of the period of advertisement required by the order of publication, and without any proof being offered to satisfy the Court that at the final hearing, a sale of the mortgaged property would be ordered. This order is identical in terms with that in the case of *Dorsey's Lessee vs. Garey, ante*, 489. In that case it was decided, upon full consideration and careful examination of the several

provisions of the Code in connection with section 129 of Ar-
ticle 16, that that section confers on the Court the power, in
all cases coming within its provisions, upon satisfactory proof
as therein prescribed, to pass an order of sale *at any time* after
the bill has been filed, without waiting for the appearance or
answer of the defendant. That the present case comes within
the operation of this section cannot be a matter of doubt. A
bill filed for the sale of mortgaged real estate, is a suit insti-
tuted for the sale of real estate within the very terms of the
section, and within the ordinary and acknowledged jurisdic-
tion of a Court of Equity. The provision in section 125, that
in any suit to foreclose a mortgage, the Court may decree a
sale unless the debt be paid by a day fixed in the decree, is
not only to be read in connection with, and as subordinate to
the general provision in section 129, but the having a day
fixed for payment previous to a sale, is a privilege which the
mortgagor may waive by answer, or by previous assent con-
tained in the mortgage itself, as was done in the present in-
stance, by the stipulation that, if any default were made in the
payment of the principal or interest of the mortgage debt, the
mortgagee "may forthwith foreclose this mortgage and sell
the property hereby mortgaged." The power thus given to
the Court is to be exercised in its discretion, which is not,
however, as we have said in the case referred to, a mere arbi-
trary discretion, but subject to review on appeal in the same
case. The section provides that the Court must be satisfied
clearly "by proof," that at the final hearing a sale will be
ordered; but what proof, or how to be taken, is not prescribed.
The order upon its face states the Court was so satisfied, and
we cannot say the discretion has been improvidently exercised
for want of sufficient proof in this respect. The mortgage
was executed on the 1st of September, 1857, for the large
sum of $24,000, payable in five years, with interest thereon
payable annually; and the original instrument was exhibited
with the bill filed on the 5th of December, 1863, which
charges not only that no part of the principal or interest of

the debt had been paid, but that an attachment had been issued out of the same Court on its law side, at the instance of another creditor, and levied upon the mortgagor's interest in the mortgaged property, and that the mortgagee had been made a defendant in the Equity case in the same Court, of Thompson and others, *cestuis que trust,* against the mortgagor as trustee. With the allegations of that bill and the proceed-ings in that case, as well as the attachment, the Judge who passed this order must have been cognizant, as part of the proceedings of his own Court thus brought to his attention. What other proof was adduced to influence the exercise of this discretionary power the record does not disclose, but if these were the only facts or proofs before the Judge, they offered, in our opinion, ample ground for the passage of the preliminary order of sale, and vindicate the proper exercise of the discretion which the law vested in the Court. But this was a proceeding against the defendant as a non-resident, and the order here, as in *Garey's case,* was passed before the expiration of the time limited by the order of publication for the appellant to appear, and consequently without either actual or constructive notice to him. In that case, where the validity of the order was assailed collaterally, we said: "unquestionably before passing such an order, it would, *in most cases,* be proper that previous notice should be given to the parties, and in a case where the question is presented by a direct proceeding, authorizing a review of the Court's action, the want of such notice *might be* considered sufficient ground for a reversal of the order." The subsequent proceedings, however, in this case relieve it from all difficulty on this ground, and would fully justify an affirmance of the order upon direct appeal from the final decree. The record shows the trustee did not proceed to sell until *after* the expiration of the time limited in the order of publication; that he then sold at public sale, after due and ample advertisement, and obtained its full value for the land. Indeed, the weight of testimony in the record in *Dorsey vs. Pue,* and in the attach-

ment cases to which we are referred for proof on this subject, is that it sold for as much, if not more, than it would now bring in the market. The sale was duly reported and finally ratified by the Court. A commission then issued, under which were proved the mortgage, and the note evidencing the mortgage debt—proof abundantly sufficient to warrant a decree for a sale. The auditor then stated an account, distributing the proceeds in part payment of the mortgage debt, leaving a balance of $3,456.40 still due thereon, and this account was finally ratified by the Court, and the trustee directed to distribute the fund accordingly. The order ratifying this account, the only final decree which could be passed after the preliminary order of sale, and the only one, in such a case, contemplated by section 129, was passed on the 6th of December, 1864. In the appellant's petition, filed more than fifteen months thereafter, no equitable considerations are presented to induce the action therein asked. There is no averment that the auditor's account is incorrect, or that the property was sacrificed, or did not sell for its full value. The existence of the mortgage debt is not denied, nor is there an allegation that any part of the principal or interest thereof had ever been paid, nor is there any offer to redeem or willingness expressed to pay the same, in case the sale should be annulled. It is no part of the purpose or design of the petition to open the decree in order to let in a meritorious defence to the bill. Under such circumstances, there is no ground for reversing the order directing the sale, which we have decided the Court had power and jurisdiction to pass.

2d. The second objection is that the appellant was not liable to be proceeded against as a non-resident. In his petition he avers that about the 1st of July, 1861, being then as now, a citizen of Maryland, he left his home to visit his wife then ill at her father's in Winchester, Virginia, with the intention of returning in a few days, but owing to the position of the two armies in and about Winchester and Harper's Ferry, was unable so to do; that his absence was thus prolonged and his

return thus prevented until he was advised it would no longer be safe to make the attempt; and that he was forced to wait impatiently for the close of the civil war before he could return to his home, although at all times desirous and intending so to do. It is not denied that he continued to reside and remain out of the State from the time he left until the close of the war, and upon the proof in the record in *Dorsey vs. Pue,* there can be no doubt he was at the time this bill was filed and the proceedings thereunder took place, a non-resident within the purview of section 88, Art. 16., of the Code. The term "non-resident" in this section means "a person who doth not reside in this State," as defined in the law relating to attachment, (*Art.* 10, *sec.* 2,) and in the attachment cases, we have, upon the same state of facts decided the appellant was a non-resident.

But it is argued that even if the appellant is to be regarded as a non-resident, still as he was, at the time the bill was filed, residing within the State of Virginia, in a hostile country, and so continued during the late civil war, he must be regarded as an alien enemy, and pending the war no suit could be rightfully instituted against him in the Courts of this State, and as these proceedings were commenced and concluded during the period of hostilities, they were null and void. Such, it is contended, was the result and consequence of the war. This point has been pressed with great earnestness and ability in this and other cases where the same question is supposed to have arisen. Text writers upon international law and numerous decisions as to the effect of war upon contracts, and what rights, duties, obligations and disabilities a state of war recognizes and imposes upon all the citizens or subjects of belligerent governments, have been cited and pressed upon our attention. We have examined them with care, and given to the argument of counsel a patient consideration. The authorities, and especially the decisions of the Supreme Court, establish beyond controversy, that the late war was a civil war, producing all the consequences *inter partes* of an international

or public war, and we have no doubt upon the facts proven and admitted, that the appellant lived in enemy's territory, occupied towards the citizens of this State an enemy's *status*, and became in legal language an alien enemy. As to many of the consequences resulting from a state of war, there is no difficulty or contrariety of decision. When duly declared or recognized, it imparts a prohibition to the subjects or citizens of all commercial intercourse and correspondence with citizens or persons domiciled in the enemy's country. All contracts made during the war between citizens of one belligerent and those of the other, without permission or license of the government, are unlawful and void; existing partnerships with foreigners are dissolved by the same event which makes them alien enemies; the Courts of each country are closed against the citizens of the other; and there is a total inability on the part of an enemy creditor to sue upon any contract in the tribunals of the other belligerent during the war, but the restoration of peace removes the disability and opens the doors of the Courts, and hence contracts entered into before the war, which can be enforced only by a resort to the Courts of one belligerent by the citizens of the other, are suspended during the continuance of hostilities. · These general rules and doctrines are firmly settled, but do they embrace, or do the reasons upon which they are founded cover the case before us? The exact question here presented is, can a citizen of this State enforce the laws of the State in the Courts of the State, so as to subject the real estate of a non-resident enemy, situated in the State, to the payment of a debt contracted before the war began and secured by a mortgage on the property itself, executed and recorded here, whilst the debtor himself was a resident of the State, or, in other words, can war have the effect of suspending *in favor* of a non-resident enemy and to *the prejudice* of a resident and friendly creditor, our own laws passed for the purpose of enabling our own Courts to sell for payment of debts the property of non-residents situated in the State, held under and subject to its laws and within the juris-

Dorsey *vs.* Dorsey.

diction of its Courts? The argument in favor of the appellant, stated in its strongest light, is this: The object of the order of publication, made under the law affecting an absent or non-resident defendent, is to notify and warn him to appear by a certain day in Court and defend his rights; that no man can have those rights impaired in any Court without an opportunity of so defending them, and no Court has jurisdiction over them until it has afforded him such opportunity; that the notice thus given is equivalent to personal notice by the service of a writ, and all proceedings are void unless one notice or the other is given; that whilst war exists the notice by order of publication is utterly futile and unlawful, all intercourse between the citizens of the respective governments being prohibited; that it could not possibly reach the party for whom it was intended, because no communication could be had between the place of publication and the place where the party intended to be notified, resided at the time; and even if by legal possibility such notice could reach him, still, being an enemy, he could not appear and defend; the notice, therefore, in this case was a notice which could not possibly reach the appellant, requiring him to do a thing which he could not possibly perform—a notice impossible to be known, to do a thing impossible to be done—and such an order of publication must by consequence be utterly futile, illegal, and void. But a brief examination of the provisions, purpose and object of the law relating to non-resident owners of property here situated, who are made defendants in chancery suits in this State affecting such property will, we think, afford a sufficient answer to this argument. All that the law requires in such cases is that the *Court shall order* notice to be given by publication in one or more newspapers, stating the substance and object of the bill, and warning the non-resident to appear on or before a day fixed in its order, and show cause why the relief prayed should not be granted, such notice *to be published* as the Court may direct, but not less than once a week for four successive weeks, three months

before the day fixed by the order for the appearance of the
party, and if he does not appear at the time stated, the Court
is then authorized to proceed in the case by passing a decree
*pro-confesso*, or taking testimony *ex parte*, and then to final
decree upon the subject matter.   The law applies to all non-
residents wherever they may reside, and the order is passed
upon the mere allegation of the bill that the defendant is a
non-resident, without stating his place of actual abode, which,
in many, if not a majority of cases, is unknown either to the
complainant or the Court.   It is to be passed by the Court
and published, and when these things are done full authority
is given to proceed to decree without regard to the fact,
whether the notice was ever seen by the defendant or not, and
without reference to the possibility of its reaching him, or of
his ability to appear in compliance with the warning it con-
tains.   Strict compliance with the requisites of the statute is
demanded ; but when this is done and the case has proceeded
to final decree, the property sold, and title acquired thereun-
der, the Courts will not listen to any evidence that the party
has not or could not actually receive the notice, or make his
appearance.   It is simply a statutory mode of conferring upon
the Court power to pass judgment on property, the subject
matter of suit within its jurisdiction, when the owner is beyond
the reach of its process.   The Courts in such cases act upon
the presumption of notice which they will not allow to be
rebutted.   The whole theory of the law of constructive notice
rests upon this foundation.   In numerous cases an equal impos-
sibility of receiving and complying with the notice exists as
in the case of war.   A party may be sick or imprisoned in a
distant land at such place and under such circumstances that
within the time limited no notice could by any possibility
reach him ; but this or any other *vis major*, or act of God,
will not oust the jurisdiction of the Court over his property
once obtained by pursuing the requirements of the statute, or
defeat the title acquired under its final decree thereon.   If
war and residence in enemy's territory can be set up to avoid

Dorsey *vs.* Dorsey.

the proceedings and defeat the title, there is no good reason why any other cause creating an equal impossibility of receiving notice should not be allowed to have the same effect. This would defeat the very object of the law, embarrass judicial proceedings, and render insecure titles derived under judicial sales. After a careful consideration of the question, we are forced to the conclusion that the existence of the war furnishes no ground for impeaching the jurisdiction of the Court and disturbing the title of the purchaser acquired in this case. Neither the contract nor the remedy upon it was suspended, because there was no necessity to resort to the enemy's Courts to enforce it against the mortgaged property. The idea that the *act of the Court* in ordering the publication to be made, and its publication accordingly, constitute unlawful communication with the enemy, because by possibility treasonable matter might be thus communicated to him, we cannot for a moment entertain.

We have given the case the best consideration we are able to bestow upon it, and are satisfied there is no ground for reversing the order dismissing the appellant's petition, and accordingly affirm it.

*Order affirmed.*

(Decided 29th May, 1869.)