GEORGE K. McGAW et al. *vs.* MARY A. GORTNER
ET. AL.

*Land of Deceased Debtor Liable Under the Statute to Claims of Creditors, But Not For Unliquidated Damages—Non-Resident Defendants.*

Code, Art. 16, sec. 188, provides that upon the death of a person leaving real estate, but not leaving personal property sufficient to pay his debts, the creditors of such decedent may institute suit and obtain a decree directing the sale of the real estate for the payment of the debts of the deceased owner, whether his heirs and devisees be resident or non-resident. Plaintiffs in this case filed a bill alleging that a non-resident had by a valid contract agreed to give them an option to purchase for a designated price within six months from date certain lands in the State of West Virginia; that after the death of this party but within the six months limited, the plaintiffs had notified his heirs that they elected to purchase the lands under the option, but the said heirs refused to execute a conveyance; that said decedent died seised of certain land situated in this State; that plaintiffs are entitled to recover damages against the heirs of said decedent for the breach of said contract by them, and that plaintiffs are entitled to subject said decedents land in this State to the payment of their claim under the above-mentioned statute. The defendants, who were the widow and heirs at law of the deceased, appeared under an order of publication against them as non-residents.
*Held,*

1st. That the statute was only designed to subject the land of a decedent to the claims of creditors for debts due by such decedent in his lifetime, and that since the plaintiffs' claim is not for a debt due by the decedent but merely a claim for unliquidated damages for breach of a contract by decedent's heirs, plaintiffs are not authorized to proceed under the statute.

2nd. That the cause cannot be remanded so as to allow the plaintiffs to convert this bill into one for specific performance, because the defendants, who are non-residents, were brought into Court by the order of publication to answer a bill filed for the different purpose of affecting their land in this State, and there are no means by which they can be made to appear and answer a bill for the specific performance of a contract for the sale of land in another State.

Appeal from a decree of the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Charles H. Stanley* and *Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the appellants.

*Jos. S. Wilson* (with whom were *T. V. Clagett* and *J. F. Strieby* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

The appellants in their bill of complaint charge that one William G. Gortner, being seized of certain lands in the State of West Virginia, contracted and agreed with them as follows:

*Baltimore,* Dec. 24, 1894.

"In consideration of One Dollar and other valuable consideration the receipt of which we hereby acknowledge; we, William J. Gortner, husband, and Mary A. Gortner, wife, agree to sell and deed to Geo. K. McGaw, Chas. T. Davis and J. B. Ramsay, one-half interest in all lands in Nicholas Co., West Virginia, now standing in the name of, or belonging to William J. Gortner and Mary A. Gortner aforesaid, for the sum of $6,250, and the said George K. McGaw, Chas. T. Davis and J. B. Ramsay, agrees to buy the same and pay the sum aforesaid for the one-half interest within six months from date hereof, provided after a personal inspection of said land within the six months, they the said Geo. K. McGaw, Chas.

T. Davis and J. B. Ramsay is satisfied with the value thereof, or in other words we, William J. Gortner, and Mary A. Gortner, his wife, agree to give Geo. K. McGaw, Chas. T. Davis and J. B. Ramsay, an option for six months on one-half interest in our holdings of lands in Nicholas Co., West Virginia, for the sum of $6,250. It being further agreed however that should the said Geo. K. McGaw, Chas. T. Davis and J. B. Ramsay, elect to purchase under this option it is hereby understood that the lands aforesaid are to hold and develop if possible for the equal and just account of all in such manner and at such times as may be agreed by us all and to our mutual advantage.

Selins Grove, Dec. 24th, 1894.

W. J. GORTNER,
M. A. GORTNER."

That a part of the "further consideration" for said agreement was that the complainants should pay the taxes due at the time on the lands, the same to be refunded if the complainants failed to purchase, and that they did in consequence pay the same, amounting to $190.96. They further allege that within the six months they did examine the lands and elected to purchase and so notified the widow and heirs at law of W. J. Gortner, who had died in the meantime, but they refused and still refuse to receive the purchase-money tendered them and convey the land to them. W. J. Gortner died in January, 1895, leaving no personal estate in the State of Maryland, but seized and possessed of a tract of land situate in Prince George's County. The claim of the complainants as set out in the bill is, that they have a right to subject the real estate in Maryland to the payment of whatever may be due them for the non-performance of their contract, which they charge to be $12,000, and pray they may have such relief and all "such other as the nature of their case require." They also pray for an order of publication against the appellees as non-residents directing them to appear. On the expiration of the time mentioned in the order the appelles appeared and answered, denying some of the averments of the bill and that the complainants are entitled to the relief for which they pray.

The lower Court on final hearing dismissed the bill and from its decree this appeal was taken.

The main question in the appeal is, had the lower Court jurisdiction over the case made by the bill.

The contract between the parties is not one of sale and purchase, but simply of an option for a limited period. The parties themselves so understood the agreement for they so declare in the instrument itself—"in other words we Gortner and wife agree to give McGaw *et al.* an option for six months." Without these words the contract can only be construed as an option. It bound Gortner to accept the price and convey the land, in the event that McGaw within the six months should elect. Until such election was made, there was no such obligation upon the Gortners, and if the six months expired without such election having been made, there was an end of the matter and the contract would not be binding on any of the parties. During the six months within which the election could be made the Gortners were bound to keep the property unsold, they having agreed for a valuable consideration to maintain their control over it so that they could convey if the appellants elected to purchase and paid or tendered the purchase-money. These principles are fully supported by the authorities and by the decisions of our own Court in *Coleman* v. *Applegarth*, 68 Md. 21; *Thistle Mills* v. *Bone*, 92 Md. 47; *Maughlin* v. *Perry*, 35 Md. 352. The cases to which we have been referred by the appellees are not in point; they are not those in which a valuable consideration was paid by the other party for the offer.

It seems to be clear therefore that Gortner, having died before any election was made, was not at the time of his death, nor ever was, under any legal obligation to receive the purchase-money and convey the property, and therefore there cannot be any claim against him, individually, for a breach of the contract. And if this be correct, this case cannot be brought within the operation of the 188th section of Art. 16, Code, Supplement. The words of that section are as follows: "Where any person dies, or shall have died leaving any real estate in possession, remainder or reversion and not leaving personal estate sufficient to pay his debts, and costs of admin-

istration, the Court on any suit instituted by any of his cred-
itors, may decree that all the real estate of such person, or so
much thereof as may be necessary, shall be sold to pay his
debts." Here the Court is empowered, whenever there is no
personal estate sufficient to pay the *debts* of a decedent, to de-
cree a sale of the real estate at the suit of " any of his cred-
itors." The suit must therefore be instituted by a " creditor"
and its object and purpose, the payment of the " debts " of the
decedent. A fundamental condition of fact upon which the
Court may exercise jurisdiction under this section is that there
is a debt due by the decedent in his lifetime, that is, one for
which the decedent could have been sued at the time of his
death. There is nothing in conflict with this to be found in
the case of *Van Bibber* v. *Reese,* 71 Md. 611. There the Court
said this act " makes the land descended or devised liable to
be sold for the payment of any *demand due* by the decedent ; "
and much stress was laid upon the words " demand due " at
the argument, as supporting the contention of the appellant
that the Court had authority under the facts of this case to
decree the sale of the land of the appellees located in this State.
But by the most strained construction of the words they can-
not be held, especially in the connection in which the learned
Judge employed them, to mean more than what was in fact a
subsisting claim against the decedent at the time of his death
and could not include any right or demand that should arise
after his death against his estate or any portion of it.

Now, as we have shown, Gortner was under no obligation to
sell and convey the property for the reason that up to that time
the appellants had not exercised their right of election. He
was bound to keep the land in such a condition as to the title
that if the election were made in time, the appellants could get
the benefit of the option. But he himself was never under
any obligation to sell and convey, nor at any time during his
life were the appellants in anywise bound to accept the deed,
had it been offered.

But the counsel for the appellants suggested that the bill
be " converted into a bill for specific performance ; " and

asked this Court to remand the cause under sec. 36 of Art. 5 of the Code.

It cannot be contended that the present bill may possibly be regarded as a bill for a specific performance of the contract. A single reason for this statement is sufficient. The land that is the subject of the contract is situate in the State of West Virginia, and a bill for a specific performance could affect only that particular property. The scope of the present bill as set forth in the record is to subject other property of Gortner situate in the State of Maryland to a sale for the payment of what is claimed to be due from him to the appellants. To change the scope of the bill so as to make it one for specific performance would be to permit them to substitute an entirely new bill, in which the parties defendant are non-residents and the property to be affected is situate out of the State.

The bill in the present record makes out a case in which, inasmuch as the land to be affected lies in the State, though the defendants are non-residents the Court could acquire jurisdiction by an order of publication under sec. 105 of Art. 16 of the Code. They are now in Court only by virtue of the order of publication, and this informed them that the only purpose of the bill was to obtain a decree for the sale of the land situate in Maryland. " They cannot be considered as in Court and parties to the suit for any other or different purpose, or for any purpose not *necessarily* arising out of the object of the bill as stated in the order of publication." *Fox* v. *Reynolds*, 50 Md. 572.

The remanding of the case, with liberty to the appellants to convert the bill into one for specific performance against the heirs of Gortner, all of whom reside out of the State, could therefore accomplish no good purpose. After the amendment the defendant would not be in Court for the purposes of the new bill and there would be no process by which they could be brought in. The object of the order of publication affecting an absent non-resident is to notify and warn him to appear and defend his rights and " is simply a statutory mode of conferring upon the Court power to pass judgment

on property, the subject-matter of suit within its jurisdiction, when the owner is beyond the reach of its process." *Dorsey* v. *Dorsey*, 30 Md. 534.

The proposition of the appellants therefore implies that non-resident defendants who have been brought into a case by order of publication, are to be regarded as in Court to answer another and entirely different proceeding, in which without the appearance of the defendants the Court has no jurisdiction. This we think is not within the authority of statute or reason. To so decide would have the effect of deceiving the defendants who appeared and answered for the special purposes of the suit mentioned in the order of publication and would require the Court to make decrees it could not enforce. In fact, the absence of that power is a good test by which to try the jurisdiction of the Court. A decree requiring the conveyance of West Virginia property by non-residents, who are not personally but only constructively before the Court, would be nugatory. "Chancery can have no jurisdiction where it can give no relief." *White* v. *White*, 7 G. & J. 210.

It follows from what has been said that the decree must be affirmed.

> *Decree affirmed, appellants to pay the costs.*

(Decided January 23rd, 1903.)