In re Estate of Henry J. DICKSON.

**Old Republic Surety Company, Appellant.**

**No. 98–PR–460.**

District of Columbia Court of Appeals.

Argued June 16, 1999.
Decided Aug. 26, 1999.

son was found to have violated his parole, and he has no valid claim for restoration of good time credits.

John V. Church, Baltimore, MD, for appellant. Wendy A. Hartmann was on the brief for appellant.

Darrel S. Parker, Washington, DC, for appellee.

Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellant Old Republic Surety Company ("Old Republic") challenges the entry of a $1,000 judgment against it in favor of the estate of Henry Dickson. The award was based on a nominal bond which Old Republic had issued to Addie Anglin, the former personal representative of the estate, pursuant to D.C.Code § 20–502(a) (1989). Like all nominal bonds issued under section 20–502(a), this bond expressly provided that it was intended only to secure unsecured debts of the estate and to ensure the payment of inheritance taxes. By its terms, the bond was void once those debts and taxes were paid. When Ms. Anglin failed to account for nearly $100,-000 of the estate assets, the trial court entered a judgment against her in the amount of the missing funds. The court also entered a judgment against Old Republic for $1,000, the amount of its bond.

Old Republic argues on appeal that because the bond was a nominal bond, the court should have declared it void, since there were no outstanding unsecured debts and no inheritance taxes due to the District of Columbia. We agree and reverse.

I

In December 1991 Addie Anglin and her father, Leon Shelton, filed a petition in the Superior Court seeking Ms. Anglin's appointment as the personal representative of the estate of the late Henry James Dickson. The petition alleged that Mr. Dickson had died intestate and listed twelve nieces and nephews, one of whom was Mr. Shelton, as his heirs at law and next of kin. Those relatives, the interested parties to the estate, waived the statutory requirement that Ms. Anglin post a general bond upon her appointment. D.C.Code § 20–502(a) (1989).[1] Nevertheless, Ms. Anglin was required by statute to execute a nominal bond in an amount "which the Court consider[ed] sufficient to secure the payment of the debts which [were] not adequately secured and District of Columbia inheritance taxes payable with respect to property under the control of the personal representative." D.C.Code § 20–502(a). Old Republic issued a nominal bond of $1,000 on behalf of Ms. Anglin on January 2, 1992.[2]

In December 1993 the court removed Ms. Anglin as personal representative of the Dickson estate for failure to comply with the requirements for a First Accounting, and appointed Darrel Parker as the successor personal representative. On Mr. Parker's petition, the court admitted to probate what purported to be Mr. Dickson's Last Will and Testament.[3] Leon

---

1. All citations to section 20–502(a) in this opinion are to the 1989 version, not the current (1997) version, unless the context indicates otherwise.

2. The actual bond has not been included in the record on appeal, but the parties do not dispute that it was only a nominal bond.

3. According to the record, Mr. Dickson's will had been filed with the Register of Wills on

December 19, 1991, before the bond was issued. The will itself, however, is not in the record. Furthermore, in a pleading filed in the trial court, Mr. Parker stated, "The *after-discovered will* of decedent was *filed after the default of the prior fiduciary*" (emphasis added). Regardless of when the will was filed, we do not consider any information concerning the will, since it was never presented to

Shelton and Louise West were the principal legatees under the will. Ms. West was neither an heir at law nor next of kin and never executed a waiver of bond.

On October 14, 1997, Mr. Parker petitioned the court for an order to show cause why judgment should not be entered against the removed personal representative, Ms. Anglin, and her surety, Old Republic, for failure to account for estate assets. Following a hearing, the court granted judgment against Ms. Anglin in the amount of $98,904.41 and against Old Republic for $1,000, the amount of its bond. After its motion for reconsideration was denied, Old Republic appealed.

## II

■ Old Republic contends that the nominal bond it issued cannot be used to pay for losses caused by the malfeasance of the former personal representative, Ms. Anglin, because the bond was intended exclusively to secure the payment of unsecured debts and of District of Columbia inheritance taxes, and because the language of the bond expressly limits its application to those purposes. It argues that, because the estate had no outstanding unsecured debts and did not owe any District of Columbia inheritance taxes, the court should have declared the bond void. We agree.

■ At the time Old Republic issued its bond, section 20–502(a) of the Code provided that when the bond requirement is waived by the decedent's will or by the interested parties, "a bond must nevertheless be given in an amount which the Court considers sufficient *to secure the payment of the debts which are not adequately secured and the District of Columbia inheritance taxes* payable with respect to property under the control of the per-

sonal representative" (emphasis added). It was under this provision that Ms. Anglin sought, and Old Republic issued, the bond in this case. The plain language of the statute convinces us that bonds issued under that subsection are intended only to ensure payment of unsecured debts and District of Columbia taxes and cannot be used for any other purpose.[4]

This interpretation is supported by a 1995 amendment to section 20–502(a) which removed from the statute the language we have quoted in the previous paragraph. Under the revised section, a personal representative need not obtain a bond when excused from doing so, either by the decedent's will or by waiver of all interested parties. *See* D.C.Code § 20–502(a) (1997). Had the amendment been enacted sooner, Ms. Anglin would not have been required to obtain any kind of bond before being appointed personal representative. In that event, there would be no bond to protect unsecured creditors or the District's treasury, much less unknown interested parties like Ms. West. We interpret the 1995 amendment as simply removing the protection previously afforded to the District and to unsecured creditors by the issuance of a nominal bond; it did not otherwise alter the purpose of the statute. Unidentified interested parties such as Ms. West were never intended to be protected by nominal bonds.

Our conclusion is also supported by the Probate Rules of the Superior Court, which explicitly provide that a nominal bond is to be used only to secure unsecured debts and to pay District of Columbia inheritance taxes. *See* Super. Ct. Prob. R. 104(a).[5] That rule directs that nominal bonds shall read, in pertinent part, as follows:

---

the trial court. *See Bullock v. Young,* 118 A.2d 917, 919 (D.C.1955).

**4.** Because this case presents a question of statutory construction, we review the trial court's decision *de novo. Ashton General Partnership, Inc. v. Federal Data Corp.,* 682 A.2d 629, 632 (D.C.1996).

**5.** In accordance with D.C.Code § 20–502(g) ("A bond shall be in the form prescribed by the Rules"), Probate Rule 104 defines the types of bonds to which section 20–502(a) refers.

The condition of the above obligation is such that if _____ shall, as personal representative of the estate of _____, deceased, late of the District of Columbia, pay the debts due by the deceased, which are not adequately secured, and, if the decedent died prior to April 1, 1987, the District of Columbia inheritance taxes payable with respect to property under the control of the personal representative, then the above shall be void; otherwise it shall be in full force and effect.[6]

Thus the language of the bond itself, as dictated by the rule, prescribes that it is only to be used to pay unsecured debts and inheritance taxes. Once those are paid, the bond automatically becomes void. It is undisputed here that there are no outstanding unsecured debts and no inheritance taxes due. Therefore, Old Republic's bond is void by the terms under which it was issued, and the trial court erred when it entered judgment against Old Republic based on that bond.

Our holding today comports with our recent decision in another case addressing limitations of liability on bonds. In *In re Estate of Spinner,* 717 A.2d 362 (D.C. 1998), we declared that "the law is established that the liability of a surety cannot be extended beyond the terms of the surety contract." *Id.* at 366 (citing *Miller v. Stewart,* 22 U.S. (9 Wheat.) 680, 6 L.Ed. 189 (1842),[7] and *Bevard v. New Amsterdam Casualty Co.,* 132 A.2d 157 (D.C. 1957)).[8] In *Spinner,* despite the fact that the surety's bond was only for $1,000, the probate court entered judgment against the surety in the amount of $15,271.35. We reversed and held that the surety's liability was limited to $1,000, the amount stated in the surety contract. Although

*Spinner* involved only a limitation on the amount of the bond rather than a limitation on its coverage, as in the instant case, we do not regard that as a meaningful distinction; thus we follow *Spinner* as merely the latest in a line of cases enforcing limits on the liability of sureties.

In this case there is no dispute that Old Republic's liability is limited to $1,000 by the express terms of the bond. In addition, the bond also limits the type of liability: it expressly provides that Old Republic is liable only for unsecured debts and inheritance taxes. By the terms of the bond, once those are paid, the bond is void. Since there is no dispute that those obligations have been satisfied in this case, the bond must be declared void.

In at least two recent cases, the Superior Court has also held that nominal bonds cannot be used to cover costs of administration of the estate. In *In re Estate of Tate,* Admin. No. 2448–93 (D.C.Super.Ct. Feb. 25, 1998) (Long, J.), the court declared that it did "not have authority to impose a judgment against this surety in this particular estate for any liability that is other than pre-existing debts of the decedent. This is true because the Code itself provides that a nominal bond is intended 'to secure the payment of the debts which are not adequately secured and District of Columbia inheritance taxes payable.' " *Id.* at 2. Likewise, in *In re Estate of Lum,* Admin. No. 82–87 (D.C.Super.Ct. Feb. 10, 1998) (Long, J.), the court held that the surety's bond could not be used to pay fees for preparing a report because it was a nominal bond, whose limited purpose was to ensure payment of unsecured debts and inheritance taxes. *Id.* at 1–2.

6. We assume, absent any assertion to the contrary, that the bond in this case employed the language required by Probate Rule 104(a).

7. "Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obli-

gation, he is bound, and no farther." *Miller,* 22 U.S. (9 Wheat.) at 702–703, 6 L.Ed. 189.

8. "A surety's obligation must be measured by the condition stated in the bond, and ... such condition cannot be construed to go further than its terms and give rights to others not mentioned either expressly or by intendment." *Bevard,* 132 A.2d at 159.

■ We find the estate's reading of section 20–502(a) much less plausible. Relying on a portion of the statute which reads "the interest of *any* interested person who does not waive bond shall be protected" (emphasis added), the estate argues that the bond should be used to protect Ms. West's interest in the estate because she was an interested party who did not waive the bond requirement. The estate also focuses on language that says, "Unless excused from giving bond by the decedent's will or written waiver of all interested persons, each personal representative shall execute a bond ... for the benefit of interested persons and creditors with a surety or sureties approved by the Court." Although we do not have the will before us, we can assume, for purposes of this opinion, that Ms. West was an interested party who did not execute a waiver of the bond requirement. Had her status been known, Ms. Anglin would no doubt have been required by this statute to execute a general bond—not just a nominal bond— before she could be appointed personal representative. But because Ms. West was not identified as an interested party, the court required Ms. Anglin to execute only a nominal bond. Old Republic issued that nominal bond on the condition that its liability would terminate once all the unsecured debts and inheritance taxes were paid. Nowhere did it agree to be liable for malfeasance by Ms. Anglin. We cannot and will not extend the liability of sureties beyond that for which they expressly contract. *See U.S. Plywood Corp. v. Continental Casualty Co.,* 157 A.2d 286, 288 (D.C.1960) ("The extent of the surety's undertaking is measured by the terms of the bond and the statute requiring its execution"). We therefore reject the estate's reading of the statutory language.

The estate also argues that the legislative history of section 20–502 reveals an intent to apply nominal bonds to protect the interests of unknown interested parties. Because the meaning of the statute is plain on its face, we need not consider the legislative history, although of course we are not precluded from doing so. *See,* *e.g., Parrish v. District of Columbia,* 718 A.2d 133, 136 (D.C.1998); *Burgess v. United States,* 681 A.2d 1090, 1095 (D.C.1996). In any event, the legislative history does not alter our decision. In discussing the Probate Reform Act of 1980, of which section 20–502 was a part, the legislature's Committee on the Judiciary said:

> If the decedent dies testate and the will excuses bond or if one or more of the interested persons are competent adults who consent in writing to the waiver of bond, then only a limited bond is needed. This *limited bond* is the amount necessary to protect claims of creditors, including the government, *and the interest or any interested person who has not or cannot waive bond....* If the personal representative does not meet the requirement of the more limited bond, a bond is required to protect both the claims of the creditors and the rights of all interested parties.

COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 3–91, THE DISTRICT OF COLUMBIA PROBATE REFORM ACT OF 1980, at 34–35 (1980) (emphasis added) (hereafter "Committee Report"). To be sure, this statement does imply that a limited bond— arguably a nominal bond—is intended to protect interested persons who do not or cannot execute a valid waiver. Nevertheless, the statement in the Committee Report does not outweigh the unambiguous language found in the statute itself and also in the rule, both of which clearly limit the applicability of a nominal bond to unsecured debts of the estate and inheritance taxes. Moreover, the Committee Report also explains that the Probate Reform Act was designed to "reduce the time and expense of administering decedents' estates." *Id.* at 1. Extending sureties' liability beyond that for which they specifically contract would surely make it more difficult and expensive to obtain bonds, thereby frustrating one of the principal purposes of the Act.

## III

We hold that Old Republic's liability on the nominal bond it issued on behalf of Ms. Anglin is limited by the terms of the bond itself. Because that bond was intended only to secure the payment of unsecured debts and inheritance taxes, the trial court erred when it entered a judgment on the bond based on the malfeasance of Ms. Anglin. Since there are no outstanding unsecured debts against the Dickson estate and no inheritance taxes due, Old Republic's nominal bond is void. The judgment against Old Republic is therefore reversed, and this case is remanded with directions to enter judgment in its favor.

*Reversed and remanded.*