887 A.2d 665

**Lynn C. WILLIAMSON, Successor Personal Representative of the estate of Agnes Smith Purnell**

v.

**NATIONAL GRANGE MUTUAL INSURANCE COMPANY.**

No. 2287, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Dec. 5, 2005.

Edward Smith, Jr., Baltimore, for appellant.

Joel P. Williams (Niles, Barton & Wilmer, LLP, on brief), Baltimore, for appellee.

Panel EYLER, JAMES R., SHARER, WOODWARD, JJ.

SHARER, J.

In this case of first impression, we are asked to determine whether a nominal bond of a personal representative can be called upon to pay commissions to the personal representative as "debts due by the decedent, the Maryland inheritance tax, and court costs."

Appellant, Lynn C. Williamson, successor personal representative of the Estate of Agnes Smith Purnell, challenges the

circuit court's (1) grant of appellee, National Grange Mutual Insurance Company's, motion for summary judgment, (2) affirmance of the orphans' court's June 22, 2004 order, and (3) denial and disallowance of appellant's claim upon the nominal bond. Appellant presents three questions for our review, which we have distilled into the following: [1]

Are personal representative's commissions debts due by the decedent?

Finding no error, we shall affirm the judgment of the circuit court.[2]

## FACTUAL and PROCEDURAL HISTORY

### *Proceedings in the Orphans' Court*

National Grange Mutual Insurance Company ("National Grange"), appellee, issued a $25,000 nominal bond of personal

---

1. As set out in her brief, appellant's issues are:
 1. Did the trial court err in affirming the decision of the Orphans' Court?
 2. Did the trial court err in granting summary judgment pursuant to rule 2–602?
 3. Did the trial court err in finding that the appellant's claim did not fall with[in] the coverage of the nominal bond issued by National Grange Mutual Insurance Company?

2. In the circuit court both parties stipulated to various facts in lieu of testimony. The stipulation included, *inter alia,:* (1) the terms of the nominal bond at issue and its limited coverage for "debts due by the decedent, the Maryland inheritance tax, and court costs," (2) that appellant's claim sought coverage under the nominal bond for her fees and commissions as successor personal representative, and (3) that the exhibits to the stipulations and filings in the orphans' court were properly before the circuit court for consideration. These stipulations provided undisputed facts for both the trial court's *de novo* review, pursuant to CJ § 12–502, and its consideration of National Grange's motion for summary judgment.

 In *Beyer v. Morgan State Univ.*, 139 Md.App. 609, 636, 779 A.2d 388 (2001) *aff'd*, 369 Md. 335, 800 A.2d 707 (2002), this Court approved the circuit court's entry of summary judgment in the context of a review under CJ § 12–502, acknowledging that the party against whom a motion is directed must "identify for the Circuit Court all genuine issues of material fact that … were in dispute" and "also to proffer the evidence that would be admissible on those disputed issues."

representative ("nominal bond"), dated January 6, 2001, on behalf of Nicole D. Quashie and James Lofton as co-personal representatives of the Estate of Agnes Smith Purnell.[3] Ms. Purnell, by the terms of her will, excused her personal representatives of the obligation of posting a bond. Thus, the nominal bond was ordered by the orphans' court.[4] The bond was in the following form:

## NOMINAL BOND OF PERSONAL REPRESENTATIVE

As of this 5th day of January, 2001, NICOLE D. QUA-SHIE & JAMES LOFTON, personal representatives of the Estate of AGNES SMITH PURNELL—National Grange Mutual Ins. Co., as principal and surety are obligated to the State of Maryland in the sum of 25000 Dollars.

This obligation shall be void if the personal representative pays from the estate the debts due by the decedent, the Maryland inheritance tax, and court costs.

Thereafter, the bond form contained the signatures and address of Ms. Quashie, Mr. Lofton, and an agent, as attorney in fact for National Grange.

The coverage of the nominal bond was limited to the guarantee of payment of "the debts due by the decedent, the Maryland inheritance tax, and court costs."

The record discloses that James Lofton was relieved of his obligation as personal representative by the Orphans' Court on September 14, 2001, leaving Ms. Quashie as the remaining personal representative. Appellant asserts in her brief that Ms. Quashie absconded with assets of the estate, leaving the estate insolvent. Indeed, she repeatedly failed to comply with the orphans' court orders. As a result, she was removed as personal representative and appellant was appointed as special

---

3. The bond was issued by Martel and Associates, as agent for National Grange. Martel and Associates is not a party to the litigation.

4. We shall discuss the distinction between a personal representative's bond and a nominal bond, *infra*.

administrator/successor personal representative by the orphans' court on June 10, 2003.[5]

On March 5, 2004, appellant filed a first administration account, petition for attorney's fees, and petition for surety/bond company to reimburse the estate. The orphans' court, on March 16, 2004, issued an order requiring Martel and Associates, an insurance agency, to "honor the bond it issued and reimburse the Estate" in the amount of $25,000 "and turn over said funds" to appellant. Upon learning that the orphan's court had ordered Martel to "honor the bond it issued" and make payment of the full amount of the nominal bond, National Grange filed a motion to revise in the orphans' court on May 20, 2004. By order dated May 27, 2004, the orphans' court found mistakes and irregularities in its March 16th order. The court revised that order, in part, with directions that appellant provide notice and service of her claims to National Grange. No appeal of the orphans' court's revised order was taken.

Appellant filed a renewed petition to order the surety to reimburse the estate on May 30, 2004, itemizing two claims against the nominal bond: (1) a $6,780.80 credit card debt of the decedent to First Financial Federal Credit Union; and (2) appellant's claim for personal representative commissions in the amount of $12,593.18. On June 4, 2004, appellant submitted a third claim against the nominal bond for a debt of the decedent to the Greater Baltimore Medical Center, in the amount of $343.66. National Grange filed its partial opposition to appellant's renewed petition on June 21, 2004, objecting particularly to the request for payment of commissions. By order dated June 22, 2004, the orphans' court approved the claims against the nominal bond for the decedent's credit card and hospital bills, but denied appellant's commission claim,

---

5. We are not certain of the relationship, if any, of the various parties to the decedent, Ms. Purnell. We were told at oral argument that appellant was, at the time of her appointment, counsel for Ms. Purnell's husband.

finding that it was "not a debt due by the decedent or otherwise covered by the Nominal Bond."

### *Proceedings in the Circuit Court*

Appellant appealed the orphan's court's order to the Circuit Court for Baltimore County, pursuant to § 12–502 of the Courts & Judicial Proceedings Article ("CJ") of the Md.Code (2002 Repl.Vol.), on July 30, 2004. On September 29, 2004, National Grange filed a motion for summary judgment. At the *de novo* trial, pursuant to CJ § 12–502, the parties submitted stipulations in lieu of testimony, which included an agreement to the terms of the bond and the nature of appellant's claim against it.

The circuit court filed its order on November 30, 2004, which granted National Grange's motion for summary judgment; affirmed the orphans' court's June 22, 2004 rulings; and denied and disallowed appellant's claim for commissions on the nominal bond. This timely appeal followed.

### STANDARD of REVIEW

Appellant's appeal to the circuit court was filed pursuant to CJ § 12–502, which provides in relevant part:

(a) *In general; exception in Harford and Montgomery counties.*(1)(i) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphans' court.

(ii) The appeal shall be heard de novo by the circuit court.

(iii) The de novo appeal shall be treated as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court.

(iv) The circuit court *shall give judgment according to the equity of the matter.*

(Emphasis added).

■ This Court has interpreted the phrase "shall give judgment according to the equity of the matter," to mean that the "circuit court, in a trial *de novo* of an appeal from an

orphans' court, may render judgment according to the evidence presented by the parties and decide the case as if the matter had never been adjudicated in the orphans' court." *Mercantile–Safe Deposit & Trust Co. v. Hearn,* 62 Md.App. 39, 46–47, 488 A.2d 202 (1985) (citing *Estate of Soothcage v. King,* 227 Md. 142, 176 A.2d 221 (1961)). The circuit court, however, may not disregard the applicable law. *Hearn, supra,* 62 Md.App. at 47, 488 A.2d 202.

Our review of the issues raised in this appeal, therefore, is pursuant to Md. Rule 8–131(c):

> (c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

## DISCUSSION

### *Are personal representative's commissions debts due by the decedent?*

■ An examination of the statutes and rules governing the issuance of a nominal bond, the plain language of the bond at issue, established secondary authority, and persuasive authority from other jurisdictions all demonstrate that a nominal bond cannot be called upon to pay a personal representative's commissions.

### *Bond v. Nominal Bond*

The need for a personal representative's bond is established in § 6–102 of the Estates and Trusts Article ("ET") of the Md.Code (2001 Repl.Vol.), which provides, in relevant part:

> (a) *When required.*—Subject to the provisions of subsections (b) and (c) unless a bond is expressly excused by the will of the decedent or by the written waiver of all interested persons, every personal representative shall execute a bond to the State of Maryland for the benefit of all interest-

ed persons and creditors with a surety or sureties approved by the register [of wills].

\* \* \*

(h) *Form of bond generally.*—(1) the bond shall be substantially in the following form: The condition of the above obligation is such, that if. .... shall well and truly perform the office of the personal representative of. .... late of. ...., deceased, according to law, and shall in all respects discharge the duties required of him by law as personal representative without any injury or damage to any person interested in the faithful performance of the office, then the above obligation shall be void[.]

As to a nominal bond, § 6–102 provides:

(b) *When waived.*—(1) Even if a personal representative is excused from giving bond, a bond shall be given in an amount which the register or the court considers sufficient to secure the payment of the debts and Maryland inheritance taxes payable by the personal representative. The bond shall be conditioned accordingly.

\* \* \*

(h)(2) If the giving of a bond is excused or waived, the required nominal bond shall be substantially in the following form: The condition of the above obligation is such, that if. .... shall, as personal representative of. .... late of. ...., deceased, pay the debts due by the deceased and the Maryland inheritance tax payable by the personal representative, then the above obligation shall be void[.]

Maryland Rule 6–312(b)(2004) also discusses the nominal bond, by requiring that "[a] personal representative who is excused by will ... from giving a bond shall file a nominal bond substantially in the following form...." The rule then sets out the appropriate form and states that "[t]his obligation shall be void if the personal representative pays from the estate the debts due by the decedent, the Maryland inheritance tax, court costs, and register's fees."

## Statutory Support

Both the Estates and Trust Article and the Maryland Rules draw the distinction between a bond of personal representative and the more narrowly tailored nominal bond of personal representative.

ET § 6–102(h) contemplates two alternative types of bonds issued on behalf of personal representatives. As we have noted, if a bond is given it must substantially follow the form contained in subsection (h)(1). In the case *sub judice*, however, Agnes Smith Purnell's will excused the giving of bond. Therefore, because the giving of a bond was "excused or waived" a nominal bond was required. ET § 6–102(h)(2). By statute, the nominal bond covers only the personal representative's payment of "the debts due by the deceased and the Maryland inheritance tax." *Id.*

Maryland Rule 6–312 reiterates the statutory distinction between a bond of personal representative and the nominal bond. In contrast to Rule 6–312(a), the form of the nominal bond required by Rule 6–312(b), and issued by National Grange, describes a limited obligation to "the State of Maryland" conditioned on the failure of the personal representative to pay from the estate "the debts due by the decedent, the Maryland inheritance tax, court costs, and register's fees."

It is undisputed that the bond in this case is a nominal bond as· provided in ET § 6–102(b) and (h)(2) and Md. Rule 6–312(b). The nominal bond issued by National Grange and the form of nominal bond contained in the statute and the rule are identical, except that National Grange's nominal bond omits the phrase "and register fees."

■ It is also significant to note the language of ET § 6–102(b), which establishes the requirement of the nominal bond in an amount determined by the register of wills "sufficient to secure the payment of the debts and Maryland inheritance taxes payable by the personal representative." (Emphasis added.) Thus, a plain reading of the statute compels the conclusion that the bond is to secure the obligations of the

estate to others, including the State of Maryland, not to secure obligations of the estate to the personal representative.

## The Bond is a Contract

 The issue presented is clearly one of construction of the language of a contract—the nominal bond. " 'A surety bond is a contract and is to be construed as such.' " *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 300, 844 A.2d 460 (2004)(quoting *John McShain, Inc. v. Eagle Indem. Co.*, 180 Md. 202, 205, 23 A.2d 669 (1942)). Maryland courts adhere to the law of objective interpretation of contracts and, therefore, seek "to ascertain . . . the intention of the parties, as manifested by the terms of the instrument." *County Comm'rs of Charles County v. St. Charles Assocs. Ltd. P'ship*, 366 Md. 426, 444, 784 A.2d 545 (2001) (citations omitted). "The clear and unambiguous language of an agreement will not give way to what a party thought the agreement meant or was intended to mean." *Id.*

 The plain meaning of the term "debt due by the decedent" in the nominal bond is a debt due by Agnes Smith Purnell at the time of her death. While Ms. Purnell did owe a debt to both her credit card company and Greater Baltimore Medical Center, she owed no debt to appellant because the entitlement to commissions arose following Ms. Purnell's death.[6]

## Maryland Caselaw

We have not found a Maryland case addressing the issue raised in this appeal, nor have counsel provided us with such authority.

In *McGaw v. Gortner*, 96 Md. 489, 492–93, 54 A. 133 (1903), however, the term "debts of the decedent" was addressed in

---

6. Commissions are awarded by the orphans' court pursuant to ET § 7–601, based on the value of the property subject to administration of the estate. We have not been provided with the record of proceedings before the orphans' court; hence, we do not know on what basis the commissions were calculated.

the context of a statute permitting creditors of a decedent to seek the sale of the decedent's real estate, as permitted by statute, Code Supp. art. 16, § 188, to pay debts that his personal estate was insufficient to satisfy. In *McGaw*, the plaintiffs sought a court-ordered sale of the decedent's real estate based upon their option, exercised after his death, to purchase land owned by the decedent. *Id.* The Court of Appeals stated:

> Here the court is empowered, whenever there is no personal estate sufficient to pay the *debts* of a decedent, to decree a sale of the real estate at the suit of "any of his creditors." The suit must therefore be instituted by a "creditor" and its object and purpose, the payment of the "debts" of the decedent. A fundamental condition of fact upon which the court may exercise jurisdiction under this section is that there is a *debt due by the decedent in his lifetime, that is, one for which the decedent could have been sued at the time of his death.*

*Id.* at 493, 54 A. 133 (emphasis added).

The Court held the statute inapplicable because the plaintiffs had not exercised their option until after the decedent had died. Thus, plaintiffs were not creditors of the decedent, and the decedent owed them no debt or obligation prior to his death. *Id.* While not directly apposite, *McGaw* recognizes the distinction between debts owed by a decedent at the time of death, and obligations that arise as a result of the estate administration.

Here, the only debts due by Ms. Purnell during her lifetime were those owed to her credit card company and Greater Baltimore Medical Center. As stated, *supra*, Ms. Purnell owed no debt to appellant during her lifetime because the entitlement of commissions, much like the exercise of the option to purchase land in *McGaw*, did not occur until after Ms. Purnell's death.

## Secondary and Persuasive Authority

The view that a nominal bond cannot be called upon to pay a personal representative's commissions is further supported by

established Maryland secondary authority and persuasive precedent from the District of Columbia.

GIBBER ON ESTATE ADMINISTRATION indicates that a bond of personal representative, ET § 6–102(h)(1), "protects all interested persons, including creditors, the state (for taxes and fees), heirs and legatees." Allan J. Gibber, GIBBER ON ESTATE ADMINISTRATION § 2.33 (4th ed. 2005 Supp.).[7] If bond is excused, as it was in the case *sub judice,* however, a nominal bond, ET § 6–102(h)(2), is required. *Id.* at § 2.34. "The nominal bond protects creditors and the state (for inheritance taxes, filing fees) but *not interested persons.*" *Id.* (emphasis added).[8] An "interested person" includes "[a] person serving as personal representative after judicial or administrative probate." ET § 1–101(i)(2). Thus, since appellant, as personal representative, is an interested person not protected by the nominal bond, she cannot recover her commissions against the bond.

In *Estate of Dickson,* 736 A.2d 1007, 1009 (D.C.1999), the District of Columbia Court of Appeals held that a nominal bond, issued under a statutory provision similar to ET § 6–102(b), provided limited coverage for unsecured debts and the District of Columbia inheritance taxes, but not loss to a legatee due to the bonded personal representative's malfeasance.

At the time the surety company issued the nominal bond, D.C.Code § 20–502(a)(1989) required that, in the event of a waiver of the standard bond

---

7. For reported decisions citing GIBBER ON ESTATE ADMINISTRATION, *see Brewer v. Brewer,* 386 Md. 183, 196, 872 A.2d 48 (2005); *Comptroller of the Treasury v. Phillips,* 384 Md. 583, 597 n. 11, 865 A.2d 590 (2005); *Beyer v. Morgan State Univ.,* 369 Md. 335, 351, 800 A.2d 707 (2002); *Kann v. Kann,* 344 Md. 689, 708, 690 A.2d 509 (1997); *Merling v. Merling,* 336 Md. 365, 376, 648 A.2d 688 (1994); *Bresnahan v. Bresnahan,* 115 Md.App. 226, 238, 693 A.2d 1 (1997).

8. This distinction is highlighted by Md. Rule 6–312, in which a bond of personal representative is "obligated to the State of Maryland for the benefit of all interested persons and creditors," Rule 6–312(a), and a nominal bond, is only "obligated to the State of Maryland." Rule 6–312(b).

a bond ... be given in an amount which the Court considers sufficient *to secure the payment of the debts which are not adequately secured and the District of Columbia inheritance taxes* payable with respect to property under the control of the personal representative' (emphasis added).

*Id.* In interpreting this provision the appellate court found that "[t]he plain language of the statute convinces us that bonds issued under that subsection are intended only to ensure payment of unsecured debts and District of Columbia taxes and cannot be used for any other purpose." *Id.* As such, the court held that "[u]nidentified interested parties such as [the principal legatee] were never intended to be protected by nominal bonds." *Id.*

The District of Columbia Court of Appeals decision was further supported by Superior Court Probate Rule 104(a), which, like ET § 6–102(h)(2), required that nominal bonds read, as follows:

The condition of the above obligation is such that if. . . . . shall, as personal representative of the estate of. . . . ., deceased, late of the District of Columbia, pay the debts due by the deceased, which are not adequately secured, and ... the District of Columbia inheritance taxes payable with respect to property under the control of the personal representative, the the above shall be void; otherwise it shall be in full force and effect.

*Id.* at 1010. In addition to its statutory and rule-based support, the appellate court also emphasized decisions of the Superior Court that "held that nominal bonds cannot be used to cover costs of administration of the estate." *Id.*

Notwithstanding our holding in this case, we are not unaware of the practical problem inherent in the administration of an estate where the malfeasance or mismanagement of the original personal representative renders the estate insolvent, or barely solvent, and there is no family member or other person who would volunteer to serve as successor personal representative, knowing that compensation will not be forthcoming. We understand that the orphans' court will often call

upon a member of the Bar to perform such services, for which, in some manner, he or she is entitled to be compensated in the form of a commission as successor personal representative. While we are sympathetic to the problem, the solution does not lie in assessing such commission against a nominal bond.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT.**