800 A.2d 707

**Janet BEYER, Personal Representative of Betty Y. Keat**

v.

**MORGAN STATE UNIVERSITY.**

No. 104, Sept. Term, 2001.

Court of Appeals of Maryland.

June 10, 2002.

Reconsideration Denied July 17, 2002.

T. Sean Daugherty, Baltimore, for petitioner.

Mark J. Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, and Arthur L. Drager, on brief), Baltimore, for respondent.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

In the present matter, petitioner Janet Beyer ("Beyer"), the Personal Representative for the Estate of Betty Y. Keat ("Keat"), challenges the subject matter jurisdiction of the Circuit Court for Baltimore City on appeal, pursuant to Mary-

land Code (1974, 1998 Repl.Vol.), Section 12–502(a) of the Courts and Judicial Proceedings Article, of two Orders of the Orphans' Court allowing payment of attorney's fees and extraordinary expenses out of the Estate. Petitioner further contends that the Circuit Court improperly vacated the Order of the Orphans' Court allowing for the payment of attorney's fees from the Estate based on an oral motion for summary judgment made by respondent Morgan State University ("MSU" or "University") at the hearing on the appeal. For the reasons set forth below, we find that the Circuit Court of Baltimore City had subject matter jurisdiction to hear MSU's appeal and properly granted summary judgment in favor of MSU, vacating the Order of the Orphans' Court authorizing the payment of attorney's fees.

## I. Facts

On January 12, 1996, Betty Keat met with an untimely death from gunshot wounds inflicted by members of the Baltimore City Police Department during an altercation in which she menacingly approached the officers, crying, "There's no such thing as police in Baltimore City." [1] Keat, who had been a professor at Morgan State University, executed a will on January 25, 1982, which stated, in part:

[T]his is a final will and testament to dispose of my property, Betty Y. Keat, being of sound mind and body.

---

1. Keat, who was sixty-four years old at the time of her death, suffered from manic depression and paranoid schizophrenia. Keat regularly clashed with her neighbors who frequently called the Baltimore City Police to subdue her and take her to a hospital for treatment. On the afternoon of January 12, 1996, the neighbors watched Keat march up and down the street with bottles filled with lighter fluid, which she threw at the neighbors' homes. Keat returned home and hurled a few more bottles from the third-floor window of her home. A neighbor called the police for assistance. Several officers responded and entered Keat's home through the only point of entry, a window. Keat had abandoned using the door to the home, thus the window served as the sole method of ingress and egress. Prior to the shooting, the officers unsuccessfully attempted to stop Keat from advancing with the knife by spraying her with pepper spray.

1. House: to be sold. Proceeds to Morgan State University for repair of campus clocks.

2. Stocks, mutual funds, deferred compensation, pension. Converted to cash for litigation costs, if necessary, to enforce precedent provision. Any surplus to be donated towards fund to rectify heating plant of Soper [L]ibrary.

\* \* \*

6. Books: on India: to Soper [L]ibrary for special collection.[2]

The house was her residence at 326 Taplow Road in Baltimore City. The will made various other distributions of Keat's personal affects, such as her china, crystal, jewelry, and personal papers; it did not contain a residuary clause.

On January 18, 1996, Keat's sister and sole heir at law, Janet Beyer, retained attorney Anton J.S. Keating ("Keating") to file a survival action[3] against the Baltimore City Police officers who shot Keat. At the same time, Beyer made the

---

**2.** The Soper Library is a facility at Morgan State University.

**3.** We concur with the Court of Special Appeals's characterization of the tort action brought by Beyer against the Baltimore City Police as a survival action rather than a wrongful death action. *See Beyer v. Morgan State Univ.*, 139 Md.App. 609, 619, 779 A.2d 388, 394 (2001). Section 7–401(y) of the Estates and Trusts Article of the Maryland Code (1974, 2001 Repl.Vol.) allows personal representatives to pursue survival actions on behalf of the Estate:

He may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted, except that:

(1) A personal representative may not institute an action against a defendant for slander against the decedent during the lifetime of the decedent.

(2) In an action instituted by the personal representative against a tortfeasor for a wrong which resulted in the death of the decedent, the personal representative may recover the funeral expenses of the decedent up to the amount allowed under § 8–106(b) of this article in addition to other damages recoverable in the action.

Any recovery in the survival action would not have benefitted MSU, a specific legatee of the house.

first of four payments of attorney's fees to Keating.[4] On or about February 20, 1996, Keat's will was admitted to probate and Beyer was appointed as Personal Representative of the Estate. Beyer engaged the services of a second attorney, David Allen ("Allen"), to handle the legal affairs associated with administering Keat's Estate. On April 6, 1996, Allen notified University Counsel for MSU of Keat's bequest, and informed the University that Keat's relatives were conducting an investigation of the circumstances surrounding Keat's death, which would require use of funds from the Estate to cover the costs of the investigation and any subsequent litigation arising out of it. In response, on April 29, 1996, MSU informed Allen in writing:

> We acknowledge the intention to investigate the circumstances surrounding Ms. Keat's death. However, we do not understand why you have suggested that costs associated with those efforts take precedence over the Morgan bequest. In accordance with § 8–105(b) of the Estates and Trusts Article (Order of payment) the Morgan bequest takes precedence. Moreover, the testator did not specify that funds from the estate be used for this purpose.

Neither Beyer nor Allen responded to the University's letter.[5] Despite MSU's expressed concern about the costs of litigation, the Personal Representative filed a survival action on October 3, 1996.[6]

---

**4.** Beyer's first accounting of the estate, filed with the Register of Wills on September 9, 1997, lists a payment to Keating in the amount of $20,000 on September 10, 1996, and reimbursements to Beyer for fees paid to Keating in the amount of $2,500 on January 18, 1996, $2,500 on February 7, 1996, and $5,000 on April 25, 1996. Additionally, Keating's Time Sheet which was attached as Exhibit 1 of the Petition for Allowance of Attorney's Fees filed on behalf of the personal representative listed a payment of $10,000 to him on June 24, 1997.

**5.** Allen was subsequently replaced as attorney for the Estate of Betty Y. Keat by Leonard A. Briscoe ("Briscoe") on October 15, 1996. He also did not respond to the MSU letter.

**6.** *Beyer v. Eldridge,* Circuit Court for Baltimore City, Case No. 96–277005.

On June 28, 1996, Beyer sold Keat's house for $95,045.94 and failed to inform MSU of the sale. On August 13, 1997, after having not heard anything from the Personal Representative or her attorneys, MSU's Office of General Counsel sent a letter to Allen inquiring as to the disposition of Keat's house and the bequest of Keat's books on India which were supposed to have been turned over to the Soper Library. Again, MSU received no response.

On February 4, 1998, Beyer filed a Petition to Approve Expenditure of Extraordinary Expenses of Administration ("Expenses Petition") in the Orphans' Court for Baltimore City. The Expenses Petition requested more than $13,000 for distribution to Beyer and her relatives to compensate them for expenditures associated with cleaning and repairing Keat's house and property for sale. Although Allen was aware of communications from MSU's Office of General Counsel, notice of the Expenses Petition was served on the Soper Library, rather than on MSU's attorney. Thereafter, on March 30, 1998, Beyer filed a Petition for Attorney's Fees ("Fees Petition") with the Orphans' Court for services performed by Keating in the survival action. Once again, counsel for MSU did not receive notice of the Petition because it had been mailed to the Soper Library. On April 20, 1998, the Orphans' Court approved Beyer's Expenses Petition. On April 29, 1998, however, the Orphans' Court delayed acting upon the Fees Petition pending receipt of a verification, a certificate of service to interested parties, a detailed list of services performed by Keating, and a first and final administration account of the Estate. Keating subsequently filed a Petition for an Extension for filing these requested documents with the Orphans' Court on May 19, 1998.

On May 6, 1998, counsel for MSU entered his appearance in the Orphans' Court when he learned about Beyer's Expenses Petition and took exception thereto. Beyer filed a motion to strike MSU's exceptions on the basis that they were untimely filed and allegedly contained "inaccurate and false allegations."

On June 8, 1998, Keating filed another Fees Petition requesting $40,000 from the Estate, although the Personal Representative previously had paid Keating $30,000 for his services. The Orphans' Court granted Keating an extension of time to provide the Court with the information it had requested in its April 29th Order. The Court also ordered Keating to provide his retainer agreement with the Personal Representative for his representation of the Estate in the survival action.[7]

On July 2, 1998, over two years after the sale, MSU learned that Keat's house had been sold. MSU responded by immediately filing a Petition to Order Distribution of Property ("Petition for Distribution") with the Orphans' Court to facilitate its receipt of the bequest. In the Petition for Distribution, MSU objected to Beyer's failure to file a first and final administration account for the Estate and to the proposed payment of attorney's fees for any litigation arising out of Keat's death and requested that the Orphans' Court stay any further expenditures from the Estate pending review by the court.[8] The Orphans' Court scheduled a hearing on MSU's Petition for Distribution for September 29, 1998.

On September 9, 1998, without notice to MSU or a hearing, the Orphans' Court approved payment of $30,000 in attorney's fees to Keating and allowed him to request additional payment for services rendered following the disposition of the survival

7. Section V(C) of the retainer agreement of August 24, 1996, executed by Beyer acting in her capacity as Personal Representative of the Estate of Betty Keat provides:

The client and attorney agree that the legal fees in this case shall not exceed $40,000, unless the client receives an award, judgment, or settlement in excess of $100,000, then the client and attorney agree that the attorney shall receive 33.33% of any such award, judgment, or settlement amount, with credit given for accrued attorney's fees. The attorney's regular hourly rate is $150 per hour.

Any litigation expenses or costs recovered in the case will first be applied to litigation expenses and attorney's fees owed by the client to the attorney and then any overage will be paid to the client.

8. At this point in time, MSU was privy to the fact that Beyer was pursuing a tort action against the Baltimore City Police, but did not know that Keating had filed the Fees Petition with the Orphans' Court on June 8, 1998.

action. Thereafter, on September 11, 1998, the Orphans' Court denied MSU's exceptions to Beyer's Expenses Petition without a hearing. MSU did not receive a copy of the September 11th Order until September 25, 1998.

On October 1, 1998, MSU sent a letter to the Chief·Judge of the Orphans' Court for Baltimore City protesting the failure to receive notice of the petitions and the lack of hearings prior to the issuance of the Orphans' Court's Orders of September 9 and September 11, 1998. Counsel for MSU did not learn of the June 8, 1998 Fees Petition or September 9, 1998 Order approving of those fees until he appeared before the Orphans' Court on September 29, 1998, for the hearing on the Petition for Distribution. Although MSU requested that the Orphans' Court immediately remediate the situation, the Court declined to intervene. MSU then filed an appeal to the Circuit Court for Baltimore City pursuant to Maryland Code (1974, 1998 Repl.Vol.) Section 12–502 of the Courts and Judicial Proceedings Article [9] challenging the legitimacy of the Orphans' Court's Orders of September 9 and September 11, 1998. MSU asserted that, despite filing pleadings in opposition to the payments of attorney's fees and extraordinary expenses from the Estate, it never had been given the opportunity to be

---

**9.** Section 12–502 provides:

(a) *In general; exception in Harford and Montgomery Counties.*—(1) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphans' court. The appeal shall be heard de novo by the circuit court. The de novo appeal shall be treated as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court. The circuit court shall give judgment according to the equity of the matter.

(2) This subsection does not apply to Harford County or Montgomery County.

(b) *Manner and time of taking appeal.*—An appeal pursuant to this section shall be taken by filing an order for appeal with the register of wills within 30 days after the date of the final judgment from which the appeal is taken. Within 30 days thereafter the register of wills shall transmit all pleadings and orders of the proceedings to the court to which the appeal is taken, unless the orphans' court from which the appeal is taken extends the time for transmitting these pleadings and orders.

heard on the merits of the issues underlying the Orphans' Court's Orders of September 9 and September 11, 1998.[10] MSU also alleged that Beyer breached her fiduciary duty "to settle and distribute the estate ... as expeditiously and with as little sacrifice of value as is reasonable under the circumstances," as set forth in Maryland Code (1974, 2001 Repl.Vol.), Section 7–101(a) of the Estates and Trusts Article.

The Circuit Court consolidated MSU's appeal with the ongoing survival action brought by Beyer as Personal Representative of the Estate of Betty Y. Keat against members of the Baltimore City Police Department, which had been set for trial in February of 1999. In addition, the Circuit Court, acting *sua sponte* on January 15, 1999, appointed attorney Arthur Drager to serve as counsel to represent the interests of the Estate of Betty Y. Keat.

On February 23, 1999, the jury returned a verdict in favor of the individually named police officers and the Baltimore City Police Department in the survival action. The *de novo* hearing on MSU's appeal was held in the Circuit Court for Baltimore City on February 24, 1999. During the hearing, the following discourse took place:

Court: I have given this case a great deal of thought, and this case makes me feel extremely uncomfortable. I have really been in a dilemma as to how to deal with this. I have read Mr. Drager's recommendation. I read the [*Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 587 A.2d 511 (1991)] case. I have real concerns about the propriety of conduct that I have seen throughout this matter, and I am extremely concerned.

I am concerned about the Personal Representative making expenditures without the approval of the Orphans' Court to almost half of the entire Estate, and approval of the Orphans' Court was never even sought until more than two

---

10. MSU was referring to the exceptions it filed in response to the initial approval of the Expenses Petition by the Orphans' Court on April 20, 1998, and to its objection to payment of attorney's fees raised in its Petition for Distribution.

years after some of the expenditures had been made. That gives me a great deal of concern. I am concerned, because the original attorney for the Estate was put on notice as far back as April of '96 of an objection to a disbursement of attorney's fees, and yet, this matter went to the Orphans' Court on a petition filed twenty-three months later without a hearing in which there was an approval of the—of thirty thousand dollars, and ten thousand of it still has not been approved, which is all inconsistent with the estates and trusts article.

\* \* \*

I guess the biggest issue before me is what do we do today. You know, from—I don't know what testimony or what evidence would even be necessary, because I don't think there is a factual dispute concerning what was done by this Personal Representative. I don't think it's disputed at all that these disbursements were made. I don't think that there is a dispute that these disbursements were made prior to the approval of the Orphans' Court. And quite frankly, the Orphans' Court hasn't even approved all of it. I am concerned about Morgan not even being put on notice after they filed an objection through the original attorney representing the Estate. And then for the Orphans' Court to almost perfunctorily sign these orders really gives me some concern. . . .

[T]his case makes me very uncomfortable when I read what I have read today. In fact, forty thousand dollars was disbursed before the approval was ever even obtained, and even over objection, this disbursement was made without even having a hearing. . . .

The court then raised the issue of a summary judgment motion:

Court: ... motions for summary judgment can be filed at any time in a proceeding, and it can even be done orally.

Mr. Davis: I would so move, your honor.

Court: Mr. Briscoe, I will hear from you.

Mr. Briscoe: Well, I don't think that Miss Beyer should be penalized—

Court: I want you to tell me where there is a factual dispute concerning the times these disbursements were made—don't cut me off, the amount of the disbursements that she took for herself, what the commissions would have been. I want to know where there is a factual dispute regarding anything.

Mr. Briscoe: I can't see any factual disputes, your honor.

\* \* \*

Court: I want to add to the facts that as late as July of 1998, the Personal Representative had not made a distribution, and then an order was entered petitioning to have such a distribution made. It was not until September of 1998 that the authorization by the Orphans' Court was made in the amount of thirty thousand dollars.

Now, I don't see any factual dispute as to any of these— of the statements that I have made, and all of the distributions to Mr. Keating were made prior to or on or about June 24th of 1997, at least a year and three months before . . . the final authorization, . . . And under the Estates and Trusts Article, and Section 7–601 and 602, approval is required before such a distribution can be made. So as a matter—with respect to the facts, I'd like to know if there is any issue or fact that is not correct.

Mr. Briscoe: I can't see that there is any issue of fact as far as stated. . . .

The Circuit Court thereupon orally granted summary judgment in favor of MSU and the next day memorialized the decision, in which it stated:

1. Janet Beyer, the Personal Representative, wrongfully expended estate funds in the amount of $40,000 for legal services to Anton J.S. Keating, Esquire, in violation of her fiduciary duty under Md. Estates & Trusts Art. § 7–101(a) and without prior court approval; and

2. Janet Beyer, the Personal Representative, wrongfully expended estate funds in the amount of $13,309.53 for extraordinary expenses.

Beyer filed a timely appeal in the Court of Special Appeals, wherein she challenged the subject matter jurisdiction of the Circuit Court to hear the appeal, arguing that the September 9 and September 11, 1998 Orders of the Orphans' Court were not appealable orders, and asserting that the Circuit Court erred in vacating the Orders of the Orphans' Court by granting summary judgment to MSU. *See Beyer v. Morgan State University*, 139 Md.App. 609, 613, 779 A.2d 388, 390–91 (2001). The Court of Special Appeals held that the Order granting Beyer's Fees Petition on September 9, 1998, and the Order granting Beyer's Expenses Petition on September 11, 1998, constituted final appealable judgments of the Orphans' Court pursuant to Section 12–502(a) of the Courts and Judicial Proceedings Article, so that the Circuit Court had subject matter jurisdiction over MSU's timely filed appeal. *See id.* at 632–33, 779 A.2d at 401–02; Md.Code, § 12–502(a)(1).

With regard to Beyer's contention that the Circuit Court erred in vacating the Orders of the Orphans' Court premised on MSU's oral motion for summary judgment, the Court of Special Appeals concluded there was no genuine issue of material fact as to whether Beyer had used money from the Estate to pay the legal fees of the attorney working on the tort claim prior to receiving approval from the Orphans' Court in violation of her fiduciary duties as Personal Representative of Betty Keat's Estate. *See Beyer*, 139 Md.App. at 639, 779 A.2d at 406. The intermediate appellate court did find, however, that the Circuit Court erred in failing to make evidentiary findings as to whether the expenses for which Petitioner sought payment approval were extraordinary expenses which could be paid from Estate funds because the evidence was in dispute. *See id.* at 641, 779 A.2d at 407.[11] Therefore, the Court of Special Appeals affirmed in part, and reversed in

---

11. Neither party to this appeal has questioned the legitimacy of this part of the CSA ruling.

part the Circuit Court's grant of summary judgment, and remanded the matter for consideration of the legitimacy of the expenses approved by the Orphans' Court in its Order of September 11, 1998.

We granted a petition for a writ of certiorari in this case, 367 Md. 86, 785 A.2d 1290 (2001), to consider the following questions presented by Beyer, which we have rephrased:

1. Whether the Court of Special Appeals erred in finding that the Circuit Court for Baltimore City had subject matter jurisdiction over an appeal pursuant to Maryland Code, Section 12–502 of the Courts and Judicial Proceedings Article (1974, 1998 Repl.Vol.) about the September 9 and September 11, 1998 Orders entered by the Orphans' Court?

2. Whether the Court of Special Appeals erred in affirming the Circuit Court's decision to vacate the September 9, 1998 Order of the Orphans' Court granting payment of attorney's fees pursuant to an oral motion for summary judgment? [12]

## II. Discussion

### A. Subject Matter Jurisdiction of the Circuit Court

Beyer argues that because MSU, an interested party to the Estate, did not receive notice of the Expenses and Fees Petitions pursuant to Section 7–502(a) of the Estates and Trusts Article, the subsequent order of the Orphans' Court granting the petition was not a final judgment for purposes of triggering the appellate provisions of Section 12–502 of the Courts and Judicial Proceedings Article. Rather, Beyer contends that because MSU did not receive notice, its appellate

---

12. Additionally, in her Petition for Writ of Certiorari, petitioner cautioned that we should not rely on the facts set forth in the Court of Special Appeals opinion, asserting that the facts have not been "proven or even offered as evidence, and some have no basis in the briefs, record extract, record or reality." Pet. for Writ at 10. The facts with which petitioner takes issue are of no consequence to the resolution of this matter.

remedies were limited to challenging the order granting attorney's fees under the procedures set forth in Section 7–502(b) of the Estates and Trusts Article and Maryland Rule 6–416(a)(5).[13] What Beyer is attempting to do is take advantage of her own failure to act appropriately as the Personal Representative by bolting the door to the Circuit Court to MSU; with this we do not agree.

Our analysis begins with an examination and interpretation of Section 7–502 of the Estates and Trusts Article and related Maryland Rule 6–416, governing notice of proposed payments from the Estate to the Personal Representative or an attorney, as well as Section 12–502 of the Courts and Judicial Proceedings Article and related Maryland Rule 6–463 concerning appeals to the Circuit Court from judgments rendered in the Orphans' Court. The principal goal of statutory interpretation is to ascertain the legislative intent behind the enactment. *See Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen,* 366 Md. 336, 349, 783 A.2d 691, 699 (2001); *Taylor v. NationsBank, N.A.,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). The statutory language serves as the primary source for determining legislative intent. *See Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730, 731 (1986). Where the statutory language is clear and unambiguous, our inquiry is at an end. *See Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 212, 783 A.2d 194, 200 (2001); *Board of License Comm'rs for Charles County v. Toye,* 354 Md. 116,

---

**13.** Maryland Rule 6–416(a)(5) provides:

An exception shall be filed with the court within 20 days after service of the petition and notice and shall include the grounds therefor in reasonable detail. A copy of the exception shall be served on the personal representative.

In her brief to this Court, petitioner cites to Maryland Rule 6–416(e), which was eliminated and rewritten in 1998 as the current provision quoted above.

122, 729 A.2d 407, 410 (1999). Where the statutory language is ambiguous, we read it within the context of the statutory scheme as a whole. *See In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001); *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997). Thus, the provisions must be read from "a common-sensical perspective to avoid a farfetched interpretation." *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001).

These principles applied to statutory interpretation are identical to those used to interpret the Maryland Rules. *See Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78, 775 A.2d 1218, 1224 (2001); *Johnson v. State,* 360 Md. 250, 265, 757 A.2d 796, 804 (2000)("If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule."); *Marsheck v. Bd. of Trustees of the Fire and Police Employees' Retirement Sys. of Baltimore,* 358 Md. 393, 402-03, 749 A.2d 774, 779 (2000)(interpreting the Baltimore City Code and explaining that the Court need not look beyond the text when the words used are plain and unambiguous).

When Beyer was appointed as Personal Representative of her sister's Estate, she undertook to perform the following duties, as set forth in Maryland Code, Section 7–101 of the Estates and Trusts Article:

(a) *Fiduciary responsibility.*—A personal representative is a fiduciary. He is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will and the estates of decedents law as expeditiously and with as little sacrifice of value as is reasonable under the circumstances. He shall use the authority conferred upon him by the estates of decedents law, by the terms of the will, by orders in proceedings to which he is party, and by the equitable principles generally applicable to fiduciaries, fairly considering the interests of all interested persons and creditors.

(b) *Time for distribution.*—Unless the time of distribution is extended by order of court for good cause shown, the

personal representative shall distribute all the assets of the estate of which he has taken possession or control within the time provided in § 7–305 for rendering his first account.

(c) *Exoneration for certain payments.*—The personal representative does not incur any personal liability by his payment of claims or distribution of assets even if he does not consider claims for injuries to the person prosecuted under the provisions of § 8–103(e) or § 8–104, if at the time of payment or distribution:

(1) He had no actual knowledge of the claim; and

(2) The plaintiff had not filed on time his claim with the register.

Thus, we must first determine whether Beyer in her capacity as Personal Representative for the Estate of Betty Y. Keat breached a fiduciary duty owed to the Estate by disbursing attorney's fees for services rendered allegedly on behalf of the Estate prior to providing notice of such payment to MSU, an interested person, and prior to receiving approval by the Orphans' Court for such expenditures. *See* Md.Code, § 7–502 of the Est. & Trusts Art.

A Personal Representative owes a duty to the beneficiaries of a will to act in the best interests of the Estate. *See Ferguson v. Cramer,* 349 Md. 760, 769, 709 A.2d 1279, 1283–84 (1998). In fulfilling this duty, the Personal Representative is obligated to exhibit the following qualities:

1. The exercise of the care, skill and diligence of a reasonably prudent person dealing with his or her own property;

2. The exercise of good faith and loyalty to all the beneficiaries;

3. The lack of self-dealing;

4. The exercise of reasonable watchfulness over investments; and

5. The maintenance of full, accurate and precise records.

*Kann v. Kann,* 344 Md. 689, 708, 690 A.2d 509, 518 (1997)(quoting A.J. GIBBER, GIBBER ON ESTATE ADMINISTRATION, at 3–1 (3d ed.1991)).

■ It is undisputed that neither Beyer acting in her capacity as Personal Representative of the Estate nor Allen or Briscoe as attorneys for the Estate, nor Keating filed the requisite Fees Petition for the work allegedly performed by Keating in the survival action prior to Keating's receipt of payment of those fees. Nevertheless, Beyer reasons that, "[i]f the attorney's fees would have been properly payable had preapproval payments not been made by [Beyer], then the breach of fiduciary duty resulted in no loss to the Estate." We simply cannot accept Beyer's no harm, no foul argument.

■ When filing a petition for attorney's fees, the Personal Representative of an estate is required to give written notice to all interested persons. Such notice sets forth the amount requested from the estate and the basis for that request, and alerts interested persons that they may make a request for a hearing within 20 days of the notice being sent. *See* Md.Code, § 7–502(a) of the Est. & Trusts Art. As "[a] legatee in being, not fully paid" based on the bequest contained in Keat's will, MSU qualified as an "interested person" for purposes of the notice provision of Section 7–502(a). *See* Md.Code, § 1–101(i)(3) of the Est. & Trusts Art. The procedure for giving notice to interested persons of a petition for attorney's fees is set forth in Maryland Rule 6–416(a)(3):

(3) Notice. The personal representative shall serve on each unpaid creditor who has filed a claim and on each interested person a copy of the petition accompanied by a notice in the following form:

NOTICE OF PETITION FOR ATTORNEY'S FEES OR PERSONAL REPRESENTATIVE'S COMMISSIONS

You are hereby notified that a petition for allowance of attorney's fees or personal representative's commissions has been filed.

You have 20 days after service of the petition within which to file written exceptions and to request a hearing.

Furthermore, the rule provides that "[u]pon the filing of a petition, the court, by order, shall allow attorney's fees or personal representative's commissions *as it considers appro-*

*priate,* subject to any exceptions." Md. Rule 6–416(a)(4) (emphasis added). The decision to allow attorney's fees is dependent upon the Orphans' Court's exercise of its discretion to approve all, some, or none of the requested fees. *See Dessel v. Goldman,* 231 Md. 428, 431, 190 A.2d 633, 635 (1963)(explaining that in allowing payment of attorney's fees from an estate, "the court must exercise sound judgment and discretion, basing its determination upon the evidence offered for its instruction and guidance and a consideration of the tests held generally applicable in fixing the size of a fee").

The Fees Petition failed to alert the Orphans' Court to the fact that funds already had been taken out of the Estate to pay Keating prior to receiving court approval for those expenditures. The first accounting for the Estate filed with the Register of Wills on September 9, 1997, however, reveals that as early as January 20, 1996, Beyer wrote a check from her own account in the amount of $500 to an investigator hired in relation to the survival action and subsequently reimbursed herself from the Estate without the Court's permission. Similarly, Beyer paid Keating a total of $30,000 in attorney's fees from the Estate for a period covering January 18, 1996 to September 10, 1996, more than two years before receiving approval for the payment of fees from the Orphans' Court. Due to Beyer's omission of information in the Fees Petition that these payments had been made, the Orphans' Court approved payment of the attorney's fees without knowledge of her violation of the dictates of Section 7–502(a) of the Estates and Trusts Article. Beyer's actions show a lack of good faith and loyalty towards MSU as a specific legatee of the Estate in breach of the fiduciary duty entrusted to her as Personal Representative of Keat's Estate.

 We turn now to the statutory provisions governing appeals from final judgments of the Orphans' Court and their applicability to the instant case. A party may take an appeal from "a judgment of the court" to either "the Court of Special Appeals of Maryland pursuant to Code, Courts Article, § 12–501," or with the exception of Harford and Montgomery Counties, "to the circuit court for the county pursuant to

Code, Courts Article, § 12–502." Md. Rule 6–463. We have explained that "[a] final judgment is any judgment or order which is 'so far final as to determine and conclude the rights involved in the action, or to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of. the proceeding.'" *Grimberg v. Marth*, 338 Md. 546, 551, 659 A.2d 1287, 1290 (1995)(quoting *In re Buckler Trusts*, 144 Md. 424, 427, 125 A. 177, 178 (1924)).

Petitioner argues that the September 9 and September 11, 1998 Orders of the Orphans' Court, which approved the payment of $30,000 in attorney's fees to Keating from the Estate and overruled MSU's exceptions to the Expenses Petition, were not final judgments which would permit MSU to file an appeal with the Circuit Court under Section 12–502 of the Courts and Judicial Proceedings Article. In support of this argument, Beyer attempts to extend our decision in *Radcliff v. Vance*, 360 Md. 277, 757 A.2d 812 (2000), to require that an interested person who is not properly served with notice of a petition for attorney's fees must file a motion to vacate the Order of the Orphans' Court granting such fees because the "substantial irregularity" caused by improper service of notice on an interested party prevents the order from being final. In its counterargument, however, MSU states, *"Radcliff* simply stands for the unremarkable proposition that when a party does not receive proper notice of an orphans' court order, there is 'substantial irregularity' sufficient to vacate the order." We agree with MSU's assessment of the applicability of *Radcliff* to the instant case.

In *Radcliff*, an interested person to an estate who did not receive notice of a petition for attorney's fees prior to the issuance of an order from the Orphans' Court approving payment of the fees challenged the court's decision by filing a petition to revoke the order with the Orphans' Court. *Id.* at 283–84, 757 A.2d at 815. We concluded that because the interested person had not received notice of the petition for attorney's fees pursuant to Section 7–502(a) of the Estates and Trusts Article, there was a "substantial irregularity" in the

proceeding which prevented the interested person from opposing the petition for attorney's fees prior to entrance of the order to pay by the Orphans' Court. *Id.* at 292–93, 757 A.2d at 820 ("An irregularity is a failure to follow required process or procedure.") In reaching this conclusion, we stated that because the interested person had not received the required notice, the order was not "final and binding upon" her. *Id.* at 292, 757 A.2d at 820. This finality language, however, cannot be manipulated *against* the position of an interested person who did not receive notice.

Section 7–502(b) of the Estates and Trusts Article provides that "[u]nless there was fraud, material mistake, or substantial irregularity in the proceeding, *or* a request for a hearing is filed within 20 days of the sending of the notice, any action taken by the court on the petition is final and binding on all persons to whom the notice was given"[14] (emphasis added). In the instant case, MSU did not file exceptions within twenty days of the issuance of the September 9, 1998 order granting payment of attorney's fees to Keating. Thus, for purposes of Section 7–502(b), Beyer's breach of the fiduciary duty owed to the Estate in her capacity as Personal Representative, along with the failed notice of the Fees Petition to MSU could constitute "substantial irregularit[ies]." We agree, however, with the Court of Special Appeals's interpretation of the relevant provisions:

> The language of ET § 7–502(b) and Md. Rule 6–416(c) cannot be interpreted reasonably to mean that unless and until proper notice is given, an order granting a petition for payment of attorney's fees (or a personal representative's commission) is not final for purposes of appeal. Under

---

**14.** Similarly, Section 6–408 of the Courts and Judicial Proceedings Article provides:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

[Beyer's] reading of the pertinent language of ET § 7–502(b), an order granting such a petition would at one time be final as to creditors and interested parties who received proper notice and non-final as to those who did not; and that would be the case in the absence of any challenge to the order on that basis. This interpretation is practicably unworkable.

*Beyer,* 139 Md.App. at 631, 779 A.2d at 401. Thus, while it is true that MSU *could have* elected to file a motion to vacate the September 9 and September 11, 1998 orders in the Orphans' Court based on the "substantial irregularity" in the proceedings, Section 7–502(b) of the Estates and Trusts Article *does not mandate* that an aggrieved interested person or creditor pursue this avenue of relief as adverse to any other avenue available when it did not receive notice from the very party who would seek to bar the door to the Circuit Court.

Beyer asserts that our decision in *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 587 A.2d 511 (1991), upon which the Circuit Court and Court of Special Appeals based their decisions that she breached her fiduciary duty as Personal Representative, is "not on all fours with this case." In *Owrutsky,* we emphatically declared that an attorney "has no right to [estate] funds, either as a commission or as an attorney's fee, unless and until an approval pursuant to § 7–601 or § 7–602 of the Estates and Trusts Article … has been obtained from the Orphans' Court." *Id.* at 344, 587 A.2d at 516. We admonished that "[a]ppropriating any part of [estate] funds to [the attorney or Personal Representative's] own use and benefit without clear authority to do so cannot be tolerated." *Id.* at 345, 587 A.2d at 516. The Court of Special Appeals likewise chastised petitioner in this case:

[Beyer] had no authority or discretion to use Estate funds to pay Keating's legal fee, to her personal benefit, without the prior approval of the orphans' court. Her conduct, like that of the lawyer in *Owrutsky,* amounted to an appropriation of Estate funds in clear violation of her fiduciary duties.

*Beyer v. Morgan State University*, 139 Md.App. at 639, 779 A.2d at 406. The *Owrutsky* analogy is extremely apt here, where the petitioner breached her fiduciary duty to give notice and secure approval before expending estate assets. *See* Md.Code, § 7–101(a) of the Est. & Trusts Art. (mandating that Personal Representatives are fiduciaries, and as such, they must "fairly consider[ ] the interests of all interested persons and creditors").

 The premise of giving notice to parties having an interest in a particular piece of litigation is to prevent such parties from being bound by the determinations of the court where they did not have an opportunity to be heard.[15] Mary-

---

**15.** When the notice provision of Section 7–502 was first enacted by Chapter 3 of the Maryland Laws of 1969, the Governor's Commission to Review and Revise the Testamentary Law explained the purpose of the provision as follows:

When the Court is to be asked to pay out or distribute estate assets to the personal representative or to the attorney for the estate, or for their respective benefits, whether in payment of a claimed debt, as compensation for services rendered, or otherwise, the personal representative or the attorney becomes momentarily, in effect, an adverse party. Therefore, to this limited degree the Commission felt that not only should notice of such contemplated request be given to all interested persons, but also that there should be a period of 20 days within which any objection thereto could be filed, and a hearing held thereon, before any payment is actually made.

Even in the absence of any request for a hearing, or an objection filed, the Court would nevertheless on its own motion, and with the thoroughness that it would deem appropriate, scrutinize the validity, fairness and propriety of any such request for payment.

GOVERNOR'S COMMISSION TO REVIEW AND REVISE THE TESTAMENTARY LAW OF MARYLAND, SECOND REPORT § 7–502, at 117 (1968). The 1969 provision, which serves as the basis for the current version of Section 7–502 states:

The personal representative shall give written notice to each creditor who has filed a claim under Section 8–104 which is still open and to all interested persons of any claim, petition or other request which could result, directly or indirectly, in the payment of a debt, commission, fee, or other compensation to, or for the benefit of, the personal representative or the attorney for the estate. The notice shall set forth in reasonable detail the amount to be requested and the basis therefor. Unless a request for a hearing thereon is filed within 20 days of the sending of the notice, any action taken by the Court in connection therewith shall be final and binding on all persons to whom the notice

land Rule 6–416(a)(6) clearly states, "[i]f timely exceptions are not filed, the order of the court allowing the attorney's fees or personal representative's commissions becomes final." Beyer indicates a desire to force MSU into a catch–22 that was created by Beyer, whereby MSU did not receive adequate notice of the Expenses and Fees Petitions from Beyer or her attorneys acting on her behalf, and yet where the failure to receive notice would bar MSU from seeking an available avenue of redress through an appeal to the Circuit Court. To permit such a conundrum would be an obfuscation of the rules by allowing noncompliance with procedural safeguards to benefit the wrongdoer. We decline to read into the statutory framework an intention to force parties who have not received the requisite notice to file motions to vacate orders of the Orphans' Court prior to exercising their statutory remedies under Section 12–502 of the Courts and Judicial Proceedings Article and Maryland Rule 6–463 to appeal the final judgment of the Orphans' Court to the Circuit Court. *See Taylor*, 365 Md. at 181, 776 A.2d at 654 ("We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.").

Therefore, we find that under the facts of this case, MSU was not required to file a motion to vacate the September 9 and September 11, 1998 Orders in the Orphans' Court prior to seeking an appeal in the Circuit Court pursuant to Section 12–502 of the Courts and Judicial Proceedings Article and Maryland Rule 6–463. The Circuit Court for Baltimore City properly had subject matter jurisdiction over MSU's appeal. We will not permit personal representatives or their attorneys the luxury of controlling an interested person's appellate remedies

---

was given unless there was fraud, material mistake or substantial irregularity in the proceeding.

1969 Md. Laws, ch. 3. The language of the current provision is substantially the same. *See* Md.Code (1974, 2001 Repl.Vol.), § 7–502 of the Est. & Trusts Art.

through their own misfeasance. Accordingly, we affirm the decision of the Court of Special Appeals.

## B. Grant of Summary Judgment

Beyer urges this Court to reverse the decision of the Court of Special Appeals by asserting that MSU failed to make a motion for summary judgment that was appropriate, because the motion was made orally rather than through a formal filing of pleadings.

Maryland Rule 2–501(e) states that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The rule does not contain any language which would require a written motion. In fact, oral motions are permitted expressly by Maryland Rule 2–311(a), which provides "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, and shall set forth the relief or order sought." *See Crews v. Hollenbach,* 358 Md. 627, 638, 751 A.2d 481, 487 (2000)(discussing the trial court's decision to grant both motions for summary judgment which were filed in writing by two parties in advance of a hearing, as well as the oral motions for summary judgment submitted by three other parties at the hearing). Therefore, the form of the motion complied with the rules; the only issue is whether the Circuit Court's decision to grant the motion was legally correct.[16]

We review a lower court's decision to grant a motion for summary judgment *de novo. See Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715, 720 (2002). In so doing, we must determine whether there is a

---

**16.** An oral motion for summary judgment, however, may raise potential due process considerations. The context and chronology of the particular circumstances of such a motion may implicate issues of fair notice and opportunity to defend for the nonmoving party. Such concerns were not expressed clearly in Petitioner's arguments in the Circuit Court, the Court of Special Appeals, or here.

dispute over a genuine issue of material fact. *See Lippert v. Jung*, 366 Md. 221, 227, 783 A.2d 206, 209 (2001). Where there are no genuine disputes as to material facts, we must determine whether the Circuit Court was legally correct in granting MSU's oral motion for summary judgment. *See Maryland Dept. of the Environment v. Underwood*, 368 Md. 160, 171, 792 A.2d 1130, 1136 (2002); *Okwa v. Harper*, 360 Md. 161, 178, 757 A.2d 118, 127 (2000).

In the case *sub judice*, the transcript of the hearing before the Circuit Court shows that there was no genuine dispute of material facts between the parties, that the last of Beyer's four payments to Keating came at least fifteen months before the Orphans' Court granted approval for payment of those fees, and that MSU did not receive notice of the Fees Petition, all of which violated Section 7–502 of the Estates and Trusts Article. Accordingly, the Circuit Court's decision to grant MSU's motion for summary judgment and vacate the September 9, 1998, Order allowing the payment of attorney's fees from the Estate was correct as a matter of law.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.*