847 A.2d 504

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

**v.**

**Diana CRISFULLI, et al.**

**No. 681, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 19, 2004.

Michael J. Budow (Richard E. Schimel, Budow and Noble, P.C., on the brief), Bethesda, for appellant.

Michael J. Moran, Lutherville, for appellee.

Panel: MURPHY, C.J., DEBORAH S. EYLER, and SHARER, JJ.

DEBORAH S. EYLER, Judge.

State Farm Mutual Automobile Insurance Company ("State Farm"), the appellant, challenges what we shall treat as a summary judgment ruling on liability, by the Circuit Court for Talbot County, on a contract claim for uninsured motorist insurance policy benefits brought by Nancy Trempe, the appellee. The parties stipulated to damages, and judgment was entered on that basis.

State Farm has raised three questions,[1] which we have consolidated into one:

Was the circuit court legally incorrect in concluding that Trempe was entitled to recover uninsured motorist benefits under State Farm's policy?

For the following reasons, we shall reverse the judgment of the circuit court.

## FACTS AND PROCEEDINGS

This case stems from a three car accident that happened on July 30, 1995, on Route 50, in Talbot County. A Toyota driven by Ok Cheon Ha and owned by Yoon Ko Myung ("the Myung vehicle") drove into the back of a BMW driven by Trempe and owned by Diana Crisfulli ("the Crisfulli vehicle"), propelling it into a car being driven by James Hurst. At the time of the accident, Crisfulli and her son Nicholas were riding as passengers in the Crisfulli vehicle. Trempe, Crisfulli, Nicholas, and Hurst all suffered bodily injuries in the accident.

The Myung vehicle was insured by Progressive Insurance Co., under a $50,000 single limit liability policy ("the Progressive Policy"). Trempe, Crisfulli, Nicholas, and Hurst all made claims against the Progressive Policy. They received payments under that policy that exhausted the $50,000 limit: $28,451 to Trempe; $17,071 to Crisfulli; $750 to Nicholas; and $3,278 to Hurst.

---

1. The questions as framed by State Farm are:
   1. Did the trial court correctly determine that the "per occurrence" limit of $50,000, rather than the "per person" limit of $25,000, applied to Nancy Trempe's underinsured motorist claim against State Farm Mutual Automobile Insurance Company?
   2. Was Nancy Trempe entitled to recover any underinsured motorist proceeds from State Farm Mutual automobile Insurance Company, given the fact that the insurance policy under which she sought coverage had a "per person" underinsured motorist limit of $25,000, and she had already received liability insurance proceeds from another insurance carrier totaling $28,451?
   3. Was Nancy Trempe entitled to a judgment against State Farm Mutual automobile Insurance Company for breach of contract in the amount of $21,549 plus costs?

The Crisfulli vehicle was insured under "State Farm Car Policy" No. 7038–689–20E ("the State Farm Policy"). The State Farm Policy included uninsured motorist ("UM") coverage, with limits of $25,000 per person and $50,000 per accident. Trempe was an insured under the UM coverage provision of the State Farm Policy.

Trempe made a claim for UM benefits against State Farm. State Farm declined to pay, on the ground that the $28,451 payment Trempe had received from the Progressive Policy exceeded the $25,000 per person limit for the UM coverage in the State Farm Policy.

State Farm paid Crisfulli $7,929 in uninsured motorist benefits, so that the payments to her, from Progressive and State Farm combined, totaled $25,000.

On February 28, 2001, in the Circuit Court for Talbot County, Trempe and Crisfulli, individually and on behalf of Nicholas, filed suit against Ha, Myung, and State Farm. The first three counts of the complaint were by Trempe, Crisfulli, and Nicholas, respectively, against Ha and Myung, and alleged negligence. Count IV was a breach of contract claim by Crisfulli against State Farm. Count V was a breach of contract claim by Trempe against State Farm. The breach of contract claims alleged that State Farm was obligated under the terms of the State Farm Policy to pay Trempe UM benefits, and to pay Crisfulli additional UM benefits.

Ha and Myung failed to answer, and on June 29, 2001, an order of default was entered against them. Thereafter, State Farm filed cross-claims against Ha and Myung.

On March 25, 2002, Trempe filed what she termed a "motion for declaratory judgment," asking the court to construe the UM coverage provision of the State Farm Policy to mean that, assuming she had proof of damages, she was entitled to recover the difference between the $50,000 per accident UM limit and the $28,451 she had received from the Progressive Policy (*i.e.*, $21,549).

State Farm failed to file a response to the "motion for declaratory judgment." On April 17, 2002, the court issued a brief order granting Trempe's "motion for declaratory judgment." On April 29, 2002, State Farm filed a motion to alter or amend, arguing that Trempe was not entitled to any payment under the UM coverage of its policy on the Crisfulli vehicle because the $28,451 she had received from the Progressive Policy exceeded the $25,000 per person UM coverage limit in the State Farm Policy.

Before the court ruled on the motion to alter or amend, State Farm filed a notice of appeal. In this Court, Trempe moved to dismiss the appeal on the ground that it was not taken from a final judgment. The motion was granted on October 17, 2002.

On remand, the court scheduled a trial date for May 12, 2003. Before then, Crisfulli voluntarily dismissed with prejudice all her claims, and those of Nicholas, and Trempe voluntarily dismissed with prejudice all her claims, except her breach of contract claim against State Farm. State Farm voluntarily dismissed with prejudice its cross-claims.

Thereafter, the remaining parties—Trempe and State Farm—entered into a stipulation about damages with respect to Count V (the only remaining count). On that basis, they jointly asked the court to enter judgment in favor of Trempe and against State Farm for $21,549. The parties also submitted a proposed "Declaratory Judgment Order," setting forth the basic undisputed facts as we have recited them, and declaring:

> that [Trempe] is entitled to recover underinsured motorist benefits under [the State Farm policy] up to the amount of $21,549.00, equaling the difference between the per occurrence limit of $50,000.00 and the Progressive Insurance Company payment of $28,451.00 . . . .

The court signed the proposed "Declaratory Judgment Order," and entered judgment in favor of Trempe and against State Farm for $21,549.

State Farm noted a timely appeal.

## DISCUSSION

Before addressing the parties' contentions, we shall comment briefly on the procedural path this case took in the circuit court. The two breach of contract claims against State Farm, by Crisfulli and Trempe, accused State Farm of breaching the UM coverage provision of its policy on the Crisfulli vehicle by not paying what they contended was the amount of damages for bodily injuries they sustained on account of negligence by Ha and Myung. They sought to recover specific sums in damages against State Farm, for the alleged breach. Ultimately, whether and to what extent State Farm would be liable to Trempe and Crisfulli, if at all, would depend, in part, on whether, on the negligence claims against them, Ha and Myung were found legally liable for the damages the plaintiffs were claiming they had sustained, and on the amount of damages proven by them. In fact, orders of default were entered against Ha and Myung and it ultimately was stipulated by Trempe and State Farm that Ha and Myung were the tortfeasors responsible for the accident.

The "motion for declaratory judgment" filed by Trempe was not a separate declaratory judgment action; rather, it was a motion for partial summary judgment on the issue of liability in her contract claim against State Farm. Indeed, it was in part for that reason that the first appeal in this case was not from a final judgment. Not only had outstanding claims by Trempe and other plaintiffs against other defendants not been resolved, the issue of damages on Trempe's breach of contract claim remained undecided. The circuit court's decision on that motion amounted to a ruling that, on the undisputed facts, ultimately stipulated to by the parties, State Farm had breached its contractual obligation to Trempe, as an insured, to pay UM benefits, *i.e.*, the grant of a partial summary judgment in favor of Trempe on the contract claim against State Farm. Thereafter, when the claims of all parties except Trempe's contract claim were disposed of, Trempe and State Farm remained as the only parties, and they entered into a stipulation about damages that resulted in the court's entering judgment on its liability finding.

Accordingly, the issue that is before us on appeal is whether the court erred in granting summary judgment on liability. As the parties have stipulated, and is clear from the record, there is no dispute of material fact. The only issue is whether the court's decision that State Farm breached the terms of the contract was legally correct. *Beyer v. Morgan State Univ.,* 369 Md. 335, 360, 800 A.2d 707 (2002); *Maryland Dept. of the Environment v. Underwood,* 368 Md. 160, 171, 792 A.2d 1130 (2002); *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000).

State Farm contends the circuit court wrongly interpreted the UM coverage language of its policy on the Crisfulli vehicle; and that, under a legally correct interpretation of that language, Trempe was not entitled to any UM benefits under the policy. Its argument is two-fold. First, it maintains that the Myung vehicle was not an "uninsured motor vehicle," either within the language of the State Farm Policy UM provision, or Md.Code (1996, 2002 Repl.Vol.), section 19–509(a) of the Insurance Article ("Ins."), which it maintains are the same. Alternatively, it argues that, even if the Myung vehicle is an "uninsured motor vehicle," Trempe is not entitled to benefits, based on certain language of the State Farm Policy and Ins. section 19–509(g), which it also maintains are the same.

Trempe responds that the court correctly interpreted the controlling policy and statutory language to conclude that the Myung vehicle indeed was an "uninsured motor vehicle"; and that State Farm's interpretation of the policy language it contends excludes the payments sought, even if correct, could not be upheld, because it would be contrary to Ins. section 19–509(g), and therefore would be void.

We are persuaded that the circuit court's ruling in Trempe's favor on the issue of her entitlement to UM benefits under the State Farm Policy was legally incorrect, because the Myung vehicle was not an "uninsured motor vehicle," within the meaning of Ins. section 19–509(a), and therefore the UM coverage under the State Farm Policy did not apply to it; moreover, the language of the State Farm Policy does not

define the term "uninsured motor vehicle" more broadly than it is defined by statute.

This issue is one of statutory interpretation. Section 19–509 provides, in pertinent part:

**Uninsured motorist coverage—In general.**

(a) In this section, "uninsured motor vehicle" means a motor vehicle:

(1) the ownership, maintenance, or use of which has resulted in the bodily injury or death of an insured; and

(2) for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death:

(i) is less than the amount of coverage provided under this section; or

(ii) has been reduced by payment to other persons of claims arising from the same occurrence to an amount less than the amount of the coverage provided under this section.

As the Court of Appeals and this Court have explained, the statutory scheme for UM coverage in Maryland in fact includes uninsured motorist and underinsured motorist coverage. *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 547 n. 8, 769 A.2d 948 (2001); *Richmond v. Hartford Underwriters Ins. Co.*, 126 Md.App. 166, 172, 727 A.2d 968 (1999). Until the enactment in 1995 of the language now constituting section 19–509(a)(2)(ii), the process of determining when a vehicle is an "uninsured motor vehicle," so that the coverage applies, required a comparison of the liability coverage limits of the tortfeasor and the UM coverage limits (*i.e.*, the "amount of coverage provided under this section"). *See Waters v. U.S. Fidelity & Guar. Co.*, 328 Md. 700, 714, 616 A.2d 884 (1992); *Gen. Acc. Ins. Co. v. Scott*, 107 Md.App. 603, 622, 669 A.2d 773 (1996); *Nationwide Mutual Ins. Co. v. Wendler*, 796 F.Supp. 201, 204 (D.Md.1992). Now, under section 19–509(a)(2)(i) and (ii), the comparison can be drawn either between the limits of the policy coverage for the tortfeasor and the UM limits, as before, or between the remaining available coverage under the

tortfeasor's policy, after reduction for claims paid for the same occurrence, and the UM limits.

In this case, as noted, Trempe was an insured under the State Farm Policy, and there was no dispute that the use of the Myung vehicle resulted in bodily injury to Trempe. The Myung vehicle thus satisfies section 19–509(a)(1). Whether that vehicle is an "uninsured motor vehicle," therefore, turns on whether 1) the limits of liability under the Progressive Policy are less than the UM limits under the State Farm Policy; or 2) the limits of liability under the Progressive Policy were reduced, by virtue of payments of claims arising from the same accident to people other than Trempe, to an amount less than the UM limits under the State Farm Policy.

The Progressive Policy has a single limit for liability payments of $50,000. That means that, for any single claim or accident, the policy will pay no more than $50,000. The UM coverage in the State Farm Policy has limits of $25,000 per person and $50,000 per accident. That means that, for any one person, the policy will pay no more than $25,000, and it will pay no more than a total of $50,000 per accident, when two or more people make claims. Thus, under the UM coverage in the State Farm Policy, the maximum amount Trempe ever could receive for the bodily injuries she sustained in the accident was $25,000, even though the per accident limit was $50,000.

The single limit for liability of $50,000 for the Progressive Policy exceeds the $25,000 per person limit of liability for the State Farm Policy/UM coverage. Thus, the facts in this case do not satisfy section 19–509(a)(2)(i), because the limit of liability under the Progressive Policy is not less than the UM limit under the State Farm Policy.

The facts in this case also do not satisfy section 19–509(a)(2)(ii). Payments to *other* claimants from the same accident (Crisfulli, Nicholas, and Hurst) reduced the liability limit on the Progressive Policy from $50,000 to $28,451.00 (the sum Progressive paid Trempe). That amount is not less than the $25,000 per person UM coverage available to Trempe as

an insured under the State Farm Policy, however. Accordingly, the Myung vehicle is not an "uninsured motor vehicle" within the meaning of the governing statute. The definition of "uninsured motor vehicle" in the State Farm Policy is essentially the same as the statutory definition.[2] Because to receive UM benefits under the State Farm Policy, the insured must have sustained bodily injuries as a result of an accident caused by an "uninsured motor vehicle," and the Myung vehicle did not meet that definition, the UM coverage did not apply.

Trempe argues that the Myung vehicle qualified as an "uninsured motor vehicle" under section 19–509(a)(2)(ii) because the amount available to her under the Progressive Policy ($28,541) was less than the *$50,000 per accident limit of liability* on the State Farm Policy/UM coverage. She relies on two cases for the proposition that, even though the UM coverage in this case had a per person limit, the per accident limit was the proper point of comparison under the statute. The cases do not support her position.

In *Waters v. USF & G, supra,* 328 Md. 700, 616 A.2d 884 (1992), which was decided under former Article 41, section 541(c), the plaintiff was insured under a USF & G policy with UM coverage limits of $100,000 per person and $300,000 per accident. The tortfeasor's liability policy had a single limit of $100,000. Two people, including the plaintiff, were injured in the accident. The tortfeasor's liability carrier paid $97,000 to the other claimant, leaving only $3,000 of the $100,000 policy available to the plaintiff. The plaintiff sought to recover UM benefits under the USF & G policy. USF & G refused, on the basis that the limit on the liability policy and the per person limit on the UM coverage were equal.

---

**2.** Under the pertinent language of the State Farm Policy, an uninsured motor vehicle is a vehicle that, with respect to bodily injury, is insured at the time of the accident but,

> the sum of the limits of liability ... that applies from such vehicle to the insured's damages ... (2) has been reduced by payment to other persons to less than the bodily injury limits of liability for uninsured motor vehicle coverage under this policy.

The Court rejected this position, holding that, for purposes of comparing coverages under the two policies, the fact that there was a $300,000 per accident limit on the UM policy had to be taken into account. The Court reasoned that, if the tortfeasor's liability policy had had a per accident limit of $300,000, the plaintiff would have received the full $100,000 amount of his claim under that policy; but because it did not, and another claimant was paid, he did not. Therefore, the coverage available to Waters under that policy was less than the coverage under the UM policy, which, on account of its $300,000 per accident limit, would allow him to recover his $100,000 damages notwithstanding the other claim.

Similarly, in *Erie Insur. Co. v. Thompson*, 330 Md. 530, 625 A.2d 322 (1993), the insured plaintiff had UM coverage under a policy with Erie, with limits of $100,000 per person and $300,000 per accident. She was seriously injured in an accident, incurring damages in excess of $100,000. Three other people also were injured or killed in the same accident. The tortfeasor had liability insurance coverage with limits of $20,000 per person/$40,000 per accident. The $40,000 limits were paid out, with $10,000 being distributed to each claimant, including the plaintiff. Other UM coverage with a $100,000 single limit also was available. That coverage was paid out by reducing the $40,000 paid by the tortfeasor's liability insurance; paying $30,000 to one claimant; and paying $30,000 to the plaintiff. The plaintiff then sought to recover UM benefits under her Erie policy.

Erie refused to pay, taking the position that, because, even though portions of the other policies were paid out to other claimants, the amounts of those policies theoretically applicable to the insured were $20,000 on the tortfeasor's policy and $80,000 on the other available UM policy; and because that total amount equaled the per person limit on the UM coverage, the insured was not entitled to UM benefits.

Applying its analysis in *Waters*, the Court rejected that argument, and held that, because the plaintiff would have recovered $100,000 if the other two policies had had per

accident limits of $300,000, as the Erie UM policy did, the amounts available to her under those two policies were less than what was available to her under the UM policy; therefore, she was "entitled to recover from Erie the difference, as long as her total recoveries do not exceed her damages or the $100,000 per person limit." *Erie, supra,* 330 Md. at 538, 625 A.2d 322. Accordingly, the plaintiff was entitled to recover $60,000 under the UM policy—the difference between the $100,000 per person limit and the $40,000 she had received from the other policies.

In *Waters* and *Erie,* the per accident limits on the UM policies in question exceeded the limits on the other available policies. If there had been equally high per accident limits on the other available policies, the insureds would not have had to share the proceeds of those policies with other claimants from the same accident. It was important, then, to consider the per accident limits on the UM policies in comparing the recoveries available under the UM policies with the recoveries that could be had for the insureds under the other available policies.

In this case, however, the $50,000 per accident limit on the State Farm Policy/UM coverage does not exceed the single limit coverage on the Myung vehicle in the Progressive Policy. The limits are the same. The per accident limit on the State Farm Policy/UM coverage therefore is not of significance. Moreover, the amount that Trempe was entitled to recover and did recover against the Progressive Policy exceeded the maximum amount that she ever would be entitled to recover under the UM coverage from State Farm. As the opinion in *Erie* makes plain, individual recovery is always limited to the per person limit of the UM policy.

The most that an individual insured ever could recover in UM benefits under the State Farm Policy is $25,000. The amount that Trempe was entitled to receive, and in fact received, from the Progressive Policy was more than that. Those undisputed, stipulated facts lead to the legal conclusion that the Myung vehicle is not an "uninsured motor vehicle" within the meaning of Ins. section 19–509(a), and therefore, as

a matter of law, Trempe is not entitled to benefits under the State Farm Policy.

**JUDGMENT REVERSED. COSTS TO BE PAID BY THE APPELLEE.**